CASE 18.—PROSECUTION   BY   THE   COMMONWEALTH AGAINST AMELIA ALLEN FOR MURDER.—May 27, 1909.

## Allen v. Commonwealth

Appeal from Breathitt Circuit Court.

J. P. ADAMS, Circuit Judge.

Defendant convicted of murder and appeals.—Reversed.

1. Criminal Law—Continuance—Grounds—Absence of Witnesses.—Accused and her husband were jointly indicted for murder and had been in jail since the homicide. They had been unable to employ counsel until the day before the trial. They were strangers in the county, and the only person to whom they could look for help was confined to his bed by sickness. They had had subpoenas issued for their witnesses in different counties, which had been given to the proper officer, but had not been returned, and none of the witnesses were present. An affidavit for continuance disclosed that accused could prove by the absent witnesses that decedent had threatened to kill accused at the first opportunity, and that the witnesses could contradict certain important state witnesses. Held, that the court abused its discretion in forcing the accused to trial.

2. Homicide — Murder — Evidence — Parol   Evidence — Dying Declarations.—Where a dying declaration was not wholly reduced to writing, and the writing was not signed by declarant, parol evidence was admissible to prove the declaration.

3. Homicide—Murder—Trial—Question of Law—Dying Declarations.—Whether a declaration was competent as a dying declaration is for the court to determine.

4. Homicide—Murder—Evidence—Dying Declarations.—The only part of a dying declaration proper for the jury is the portion of it relating to the homicide, though evidence of what declarant said and did about the time the declaration was

Allen v. Commonwealth.

made is admissible to show that she was rational and understood what she was doing; the jury being charged that it could only be considered for that purpose.

5.  Homicide—Murder—Evidence—Impeachment of Dying Declaration—Ordinarily, where a witness testifies to a fact, it cannot be. shown that he has on another occasion made statements inconsistent with his testimony, unless he is first interrogated as to the statements and allowed to explain them; but where a dying declaration is admitted in evidence, other statements of declarant inconsistent with the declaration may be shown to impeach it.

6.  Homicide—Murder—Evidence—Materiality—Family of Decedent.—In a murder case, evidence as to the number of children decedent had, and their ages was immaterial.

7.  Homicide—Murder—Evidence—Good Character.—In a murder case, accused may introduce evidence of her good character.

8.  Homicide—Murder—Evidence—Bad Character of Accused.— In a murder case, evidence of accused's bad character, based upon what occured after the homicide is inadmissible as denying the presumption of innocence from good character before the charge of crime was made.

9.  Witnesses—Competency—Persons Jointly Indicted.—Where husband and wife are jointly indicted, if they are tried together, each may testify for himself; but, where they are tried separately, one can not testify for the other.

10.  Homicide—Murder—Admissibility of Evidence.—In a murder case, accused claimed that, as she entered the house to go to her apartments on the second floor, decedent, who lived on the first floor, suddenly appeared advancing on her with a rifle, and that thereupon accused fired a pistol which caused decedent's death. It appeared that decedent had charged her husband with improper relations with accused. Held, that it was an error to exclude evidence showing that after accused left the house shortly prior to the homicide, decedent's husband came home, and he and his wife had a furious quarrel about accused, in which he struck decedent and hurt her hand and arm, after which he left just before accused entered the house, when the fatal encounter occurred, since the facts sought to be proved were closely related to the homicide both in time and logical sequence and tended to confirm accused's claim as to what took place between her and decedent and render it reasonable by showing decedent's frame of mind.

A. H. PATTON and J. J. C. BACH for appellant.

Allen v. Commonwealth.

AUTHORITIES CITED.

1. Continuance and Affidavit.—Petit v. Commonwealth, 15 S. W. 1059; Robenson v. Commonwealth, 68 S. W. 1099; Crim. Code, Sec. 189; Hensley v. Commonwealth, 74 S. W. 677.

2. Dying Declarations.—Haines v. Commonwealth, 13 S. W. 445 Saylor v. Commonwealth, 30 S. W. 390; Blyew v. Commonwealth, 15 S. W. 356.

3. Confession—Young v. Commonwealth, 76 Ky. 366, 80 Ky. 323, 59 Ky. 387, 92 Ky. 283, 42 S. W. 1125.

4. Reputation.—Montgomery v. Commonwealth.—30 S. W. 602; 23 Ky. L. Rep. 732.

JAMES BREATHITT, Attorney General, TOM. B. McGREGOR, Assistant Attorney General, Attorneys for Commonwealth.

AUTHORITIES.

Brock v. Commonwealth, 110 S. W. 878; Hardesty v. Commonwealth, 88 Ky. 537; Sec. 189, Criminal Code; White v. Commonwealth, 80 Ky. 480; Williams v. Commonwealth, 18 S. W. 364; Simmons v. Commonwealth, 18 S. W. 534; Roberts v. Commonwealth, 94 Ky. 499; Hopkins v. Commonwealth, 117 Ky. 941; Aiken v. Commonwealth, 16 S. W. 849; Jonas Smith v. Commonwealth, ———; Brandenburg v. Commonwealth, 28 R. 1051; Asher v. Commonwealth, 28 R. 1342; Sailsbury v. Commonwealth, 32 R. 1085; Wagner v. Commonwealth, 107 S. W. 318.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Amelia Allen and her husband, Theodore Allen, were jointly indicted in the Breathitt circuit court for the murder of Fanny Tutt; it being charged in the indictment that Amelia Allen shot Mrs. Tutt, and that her husband was present aiding, counseling, and inciting her to do the shooting. The indictment was found on February 15, 1909. The defendants were arraigned for trial on February 19th. They demanded a separate trial, and the commonwealth elected to try the wife first. Thereupon she filed an affidavit for a continuance. The court overruled her motion to continue the case, and a jury having been impaneled a

trial was had resulting in her being found guilty of murder, and her punishment fixed at confinement in the penitentiary for life. Her motion for a new trial having been overruled she appeals.

The affidavit for a continuance showed that the defendants had been in jail from the time of the killing, which occurred on November 21, 1908, and that they had been unable to employ counsel until the day before the trial, when they had employed A. H. Patten. They were strangers in the county, and the only person to whom they could look for help was a brother of the husband who lived in Clay county, and was confined to his bed by sickness. As soon as the indictment was returned and the case set for a day, they had subpoenas issued for their witnesses, a number of whom lived in Breathitt county, others in Lee and in Fayette. The subpoenas had been placed in the hands of the proper officer, but had not been returned, and none of the witnesses were present. The affidavit set out the facts which they could prove by a number of the absent witnesses. As to others it was stated that they had not been able to see the witness and learn what his testimony would be, or prepare their defense, by reason of the fact that they had been in jail and unable to employ counsel, as stated. The affidavit discloses that the defendant could prove by several witnesses that the deceased had threatened to kill the defendant, Amelia Allen, and had said she would kill her at the first opportunity. It also discloses the fact that by the absent witnesses the defendant could contradict or impeach certain important witnesses for the commonwealth. There is no doubt of the materiality of the evidence referred to. The court seems to have overruled the motion for a continuance upon

vol. 134—8

the ground that the subpoena was not returned exe-
cuted, but all the defendant could do was to take out
the subpoena and put it into the hands of the proper
officer, and this she had done. In view of the mate-
riality of the evidence the court abused a sound dis-
cretion in forcing the defendant to trial when she had
none of her evidence at hand.

It appears from the proof that Mrs. Tutt and her
husband lived on the first floor of a house, and that
Mrs. Allen and her husband lived on the second floor;
Mr. Allen having leased the property, and Tutt oc-
cupying the lower floor at the time that he leased it.
It also appears that Mrs. Tutt accused her husband
of having improper relations with Mrs. Allen, and
that she had used very ugly language toward Mrs.
Allen. On the evening that the shooting occurred,
Mrs. Allen went to the grocery to get some things to
eat for supper and after she had gotten the things
she went to where her husband was at work. He then
returned with her to the house, stopping at the fence.
Mrs. Allen went on in the house. There was no evi-
dence for the Commonwealth as to what occurred after
she went in, except the dying declaration of Mrs.
Tutt, which was to the effect that Mrs. Allen came to
her room and shot her with a pistol, when she had
nothing and was doing nothing to her. On the other
hand, Mrs. Allen's statement was: That Mrs. Tutt
had threatened her the day before, and that she
heard her quarreling with her husband, sharpening
her knife, and saying that she would kill her with it.
That the next morning she started to the well to get a
bucket of water, and Mrs. Tutt was standing near the
well hacking on a plank with a hatchet. She appear-
ed to be mad, so Mrs. Allen did not go to the well, but
went to the creek and got the water. That that after-

noon, as she started to the grocery, Mrs. Tutt was standing in the room with an open knife in her hand, holding it in a threatening manner and she was afraid to go and went back to her room and put a pistol in her belt. That Mrs. Tutt looked at her in a vicious manner, and she ran out of the front door. That she bought the things she wanted for supper, and then went to her husband to get him to go back with her. That when they got to the fence her husband told her to go on upstairs and pay no attention to Mrs. Tutt. That she ran on, and when she got to the hall door, which was not more than two or three feet from Mrs. Tutt's door, Mrs. Tutt turned from her mantel with a Winchester gun in her hand rested on her shoulder. That she jerked her pistol out and fired without taking any aim, and Mrs. Tutt fell. Mrs. Allen and Mrs. Tutt were both 22 or 23 years old.   Objection was taken to Mrs. Tutt's dying declaration on the ground that it appeared from the evidence that her statement was reduced to writing, and it is insisted that the writing alone should be introduced; but the proof showed that the writing was not completed and was not signed by Mrs. Tutt. The court therefore properly allowed her dying declaration to be proved by oral evidence. Whether or not the declaration was competent as a dying declaration was a question for the court. All of the testimony of the witnesses showing that the declarant was in extremis, and that the declaration was made under a sense of impending death, was for the court. The only part of the declaration that was competent for the jury was so much of it as related to the circumstances of the homicide; but what Mrs. Tutt said and did about the time the declaration was made may be given in evidence to show that she was at herself, and understood what she was saying and

doing when she made the declaration, and the court should tell the jury that these matters are only to be considered for that purpose.

The defendant offered to show that after she was shot, and while she was still lying where she had fallen, Mrs. Tutt said, in substance that she brought this trouble on herself; she was to blame. This statement is so different from her dying declaration that, if it was competent, it was important evidence in behalf of the defendant. See Brock v. Commonwealth, 92 Ky. 186, 17 S. W. 337, 13 R. 450. Ordinarily where a witness testifies to a fact it cannot be shown that he has on another occasion made statements inconsistent with his testimony unless he is first interrogated as to these statements and allowed to explain them; but when the declarant is dead, as in the case of a dying declaration, this cannot be done, and the dying declaration is admitted against the defendant, although he had no means of cross-examining the witness, and often, as in the case here the persons testifying to the dying declaration are the relations of the deceased. There is some conflict of authority on the question of the admissibility of the evidence, but the weight of authority is in favor of its admissibility. See 2 Wigmore on Evidence, Sec. 1033; Carver v. U. S. 164 U. S. 694, 17 Sup. Ct. 228, 41 L. Ed. 602; State v. Mayo, 42 Wash. 540, 85 Pac. 251, 7 Am. & Eng. Ann. Cas. 881, and note page 885; note to Harper v. State, 56 L. R. A. 441. The admission of a dying declaration is an exception to the general rule of evidence, and, where the declarant has made other statements inconsistent with the dying declaration this fact may be shown the jury for it may enable them to put a juster estimate upon the proof before them. We therefore conclude that where a dying declaration is admitted

in evidence other statements of the declarant inconsistent with the declaration may be shown to impeach it.  The deceased may have  intended on both occasions to state the truth, and when all his statements are put together, the jury can better judge what  he really meant by the dying declaration introduced on behalf of the commonwealth.

It is entirely immaterial how many  children Mrs. Tutt had, or what their ages were.  No proof on this subject should have been allowed.  The only question the jury are to try is under what circumstances she was killed by the defendant, and the number of children she had or their ages illustrated nothing in the case.

The defendant introduced on the trial two witnesses who testified that they had known her for years, and that her character was good, and  had always been so.  The court ruled this evidence out.  In a case like this the defendant may give in evidence his good character, as from  his character,  if good, the jury may presume that his conduct was not out of keeping with his character.  It is only a circumstance, but it is a circumstance competent to be considered by the jury, and it is often not without great weight.  The court erred in ruling the evidence out.  The commonwealth was then allowed to introduce a number of witnesses who testified that her character was bad, but they all admitted that they had never heard anything against her character before the killing of Mrs. Tutt.  In other words,  the fact  that she had killed Mrs. Tutt had made her character bad.  The defendant had surrendered herself to an officer a few moments after the shooting and had been immediately placed in custody.  She had remained in custody from

that time until the trial. To allow proof of bad character based upon what had been said after the homicide and growing out of it would be to deny to the defendant the presumption of innocence from her good character before the charge was made against her. Evidence of this sort was held incompetent in White v. Commonwealth, 80 Ky. 480; 4 R. 374. In that case the circuit court admitted evidence as to the character of the accused up to the time he was arrested. Holding this erroneous, after referring to a number of authorities, the court said: "But, independent of authority, we think the reason of the rule applied by the court below, in which the court extends the evidence up to the time of the arrest would stop it at the time of the discovery of the fact that the offense had been committed. The only reason for stopping the inquiry at either point is that the probabilities of innocence arising from the previous good character may not be destroyed or embarrassed by the fact that the offense under consideration has been committed. If the inquiry may be extended to the time of the arrest it may, upon the same ground, be extended to the moment of the trial; but this cannot, manifestly, be done, because it would cause the particular offense with which the accused is charged to destroy previous good character. After the discovery that an offense has been committed, a previous good character may be destroyed, and a bad one created, by discussion of the circumstances connected with the offense, as well before as after the formal charge by legal proceeding is had. To permit the inquiry as to character to extend beyond the time of the discovery that the offense had been committed would be to allow evidence based entirely upon a single transaction, which is contrary

to the whole theory upon which evidence of character is admitted in support of the presumption of innocence.''

The defendant also offered her husband as a witness on her behalf. The court properly refused to admit his evidence. If the two defendants are tried together, each may testify for himself before the jury; but, if they are tried separately, then one cannot be a witness for the other.

The defendant offered evidence showing: That, after she left home and went to the grocery, Mrs. Tutt's husband came to the house; that he and his wife then had a furious quarrel about Mrs. Allen, in which Tutt struck his wife and hurt her hand and arm; that just after this Tutt left, and soon after he left Mrs. Allen returned, and then the shooting took place. What occurred between Mrs. Allen and Mrs. Tutt when she left to go to the grocery, what occurred between Mrs. Tutt and her husband after Mrs. Allen left and before her return, and what happened when she returned, are all so closely connected both in time and in logical sequence that the whole may properly be proved. In Stevens on Evidence, art. 9, the rule as to relevancy is thus stated: ''Facts, whether in issue or not, are relevant to each other when one is, or probably may be, or probably may have been, the cause of the other; the effect of the other; an effect of the same cause; a cause of the same effect; or when the one shows that the other must or cannot have occurred, or probably does or did exist, or not.'' As the case was presented to the jury, there was nothing to confirm Mrs. Allen's statement that, as she entered the house, Mrs. Tutt suddenly appeared advancing on her with a rifle, and it was very important for the defendant to show any relevant fact which would make her statement on

this subject reasonable. If while she was gone, and after Mrs. Tutt had threatened her with the knife, Mrs. Tutt's husband had come in, and she and her husband had had a quarrel about Mrs. Allen resulting in her husband's striking her, and while she was smarting under this excitement, Mrs. Allen suddenly appeared on the scene, the condition of mind in which Mrs. Tutt was by reason of the trouble with her husband would furnish a reason for her seizing the rifle and advancing on Mrs. Allen. Without this proof the jury will not understand the frame of mind that Mrs. Tutt was in when Mrs. Allen returned to the house, and her frame of mind is a very important fact for the jury to understand when they come to weigh the evidence as to what she did.

We see no error in the instructions of the court. They fairly presented the law of the case.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.