## Jones v. Commonwealth.

(Decided April 23, 1914.)

## Appeal from Graves Circuit Court.

1. Criminal Law—Sufficiency of Evidence to Support Verdict.—When the evidence is conflicting and it becomes our duty to review the finding of the jury upon questions of fact, we will not disturb their conclusion, when no error of law has been committed and no facts appear in the record, tending to show that the complaining party did not have a fair trial, on the ground that the weight of the evidence is against the verdict.

2. Criminal Law—New Trial—Newly Discovered Evidence.—A new trial will not be granted on the ground of newly discovered evidence which is merely cumulative.

HESTER & HESTER and B. GARDNER for appellant.

JAMES GARNETT, Attorney General, and D. O. MYATT, Law Clerk, for appellee.

Opinion of the Court by Judge Carroll—Affirming.

This appeal is prosecuted by the appellant in an effort to obtain a reversal of a judgment fixing his confinement in the penitentiary for a term of not less than two or more than twenty-one years. He was charged with the murder of Gholston Hendon and convicted of voluntary manslaughter and it is strongly contended that a new trial should have been granted on the ground that the evidence was not sufficient to sustain a verdict.

It must be admitted that the weight of the evidence shows that the homicide was committed in self-defense, and if we were called on as a court of original jurisdiction to hear and determine the case we would feel disposed to say that under the evidence the killing of Hendon was excusable. But when the evidence is conflicting and it becomes our duty to review the finding of a jury upon questions of fact, we are reluctant to disturb their conclusion when no error of law has been committed and no facts appear in the record tending to show that the complaining party did not have a fair trial and so we will not interfere with the verdict on the ground that it was against the evidence.

Briefly the facts are these: The appellant and some of his colored friends were giving what they called a "beer opening" at the house of a woman named Ruby Slayden. To this party it appears Hendon had not been invited. He came, however, to the party, and all the evidence is to the effect that he first went into the front room of the house, and on being asked to drink some beer, said that he did not care for any, as he had just left where there was a keg of beer, and after remaining in the front room a few minutes he went out in the yard and in a short time came into the kitchen where the appellant and his brother were standing. Ruby Slayden says that when he came in "he shoved against those boys and told them to go in and set down, saying, 'I don't know nothing about you,' and Seville says, 'All right; if you don't know me I can set down,' and Charley says, 'I don't have to set down,' and Seville started to him and told him he could set down, and it was not long until this gun was fired." She further said that when the shooting occurred appellant and Hendon were the only ones in the kitchen. According to this witness, there was no quarrel or disturbance of any kind between these two men until the shooting commenced, which re-

sulted in the death of Hendon, who was admittedly shot by the appellant. Other nearby witnesses also testified that there was no abusive language or fight before the shooting.

The appellant, as a witness in his own behalf, said that when Hendon came into the kitchen he, using an oath, ordered all of them to get out and commenced to curse him, at the same time hitting him with his fist, knocking him down. That when he knocked him down he said he was going to kill him, and he then drew his pistol and shot him three times. Two or three other witnesses testified in substance the same as appellant.

One of the grounds for a new trial was based on newly discovered evidence. This newly discovered evidence was furnished by the affidavits of Elmer Beauregard and William Carman, each of whom said in the affidavit that shortly before Hendon was killed they met him on the street, and that he had been drinking heavily; that he told them he was not invited to the "beer opening" that Charley Jones and his crowd were having at Ruby Slayden's but that he was going up there anyway and raise hell. That they advised him not to go, but he would not listen to their advice.

We do not think this newly discovered evidence was sufficient to justify the trial court in granting a new trial. It did not develop any new fact in the case or tend to strengthen, except in a cumulative way, the evidence in behalf of the accused. The witnesses introduced for the defense testified that Hendon was drinking and that he commenced the difficulty by raising a disturbance. In short, according to the testimony of the witnesses present he did what he told Carman and Beauregard he was going to do. If the evidence of Carman and Beauregard had been before the jury, we do not think it would have strengthened in any material way the evidence for the defense. If the jury had believed from the evidence that Hendon conducted himself in the manner testified to by the appellant and other witnesses, they would doubtless have acquitted appellant on the ground of self-defense, but their verdict shows that in preference to this testimony they accepted the evidence of Ruby Slayden and others, which conduced to show that Hendon did not use any violent or abusive language or engage in an assault before he was shot by appellant.

The jury was properly instructed on every phase of the case, and while we have some doubt as to the correctness of their verdict on the facts, we are not prepared to say there was not sufficient evidence to sustain it, and the judgment is affirmed.