### Stevens v. Commonwealth.

(Decided October 4, 1927.)

## Appeal from Harlan Circuit Court.

1. Homicide.—Evidence, in prosecution for murder, held sufficient to take case to jury and uphold conviction.
2. Homicide.—Statements of a dying person can be admitted only when they relate to the manner and circumstances of the infliction on him by another of the injuries which resulted in his death.
3. Homicide.—In a murder prosecution, dying declarations of the deceased that the defendant shot him held inadmissible, where it was shown by the surrounding circumstances that the deceased could have had no opportunity to know who did shoot him.
4. Homicide.—In murder prosecution, admitting dying declaration of deceased that defendant shot him, constituting an expression of opinion, held prejudicial error, where evidence against defendant was wholly circumstantial.

C. B. SPICER and W. A. BROCK for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Logan—Reversing.

Appellant was convicted in the Harlan circuit court on the charge of murder and his punishment fixed at life imprisonment in the penitentiary. James Fee, a deputy sheriff of Harlan county, was the victim of assassination

in August, 1926. He lived at a mining town about six or seven miles from Harlan. He was assassinated by some one in ambush about 9 o'clock at night with a shotgun. He had just walked from a room of his home onto his porch when he was fired upon twice in immediate succession. He was mortally wounded and died after having been taken to a hospital in Harlan.

Later investigation developed that the assassin had concealed himself under a house occupied at the time by Josh Taylor. This house was built on the side of the hill and the lower side thereof rested on pillars several feet above the ground, leaving a space under the floor amply sufficient for the assassin to conceal himself. The Taylor house was 60 feet from the house of James Fee and on a higher elevation. There was a garden between the two houses and in the garden corn was planted which tended to obstruct the view between the two houses. Investigation on the part of the officers disclosed that the loads of shot from the gun of the assassin cut through the corn leaving traces on the stalks and blades as they sped on their way towards James Fee on his porch. The assassin had moved a rock weighing 40 or 50 pounds from one location under the floor to another, which rock he had used for a seat. The sheriff and several of his deputies went immediately to the community where the assassination took place and there they saw Fee as he was carried on a stretcher preparatory to sending him to the hospital. He there told the sheriff in the presence of the deputies that he knew he was killed, and that Jack Stevens, the appellant, killed him. He also said to the sheriff that he should arrest Jack Stevens and no one else. The sheriff, with his deputies, went to the home of Fee and following the signs of the shots through the cornfield he located the place where the assassin had been concealed. He found tracks there which were carefully measured by those who were with him and the peculiarity of the tracks noted. An effort was made to follow the tracks but it was difficult for a distance of 50 or 100 feet from the Taylor house, but when the sheriff and his deputies reached the road they found a track corresponding to the one which they had measured under the floor of the Taylor house. This track, with the peculiarities caused by patching of the shoe or placing thereon heel taps, was plainly discernible, and the officers followed it to the home of appellant. It is unnecessary to go into detail as to what occurred at the home of appellant, other than to say that he denied

all knowledge of the assassination. His wife was absent, and an examination was made of his premises. His overalls were found wet and muddy and on their seat was indication of dust similar to that found on the rock under the floor of Taylor's house. His shoes were wet and had been washed clean of mud in a pan of water which was left sitting on the floor with the sediment in its bottom. His shotgun, of the same caliber as that used in the assassination of Fee, was in his house and showed that it had recently been fired. Empty hulls were found as well as loaded hulls. The shoes found by the officers were calculated to make a track corresponding with the track found under the Taylor house and on the trail leading to the house of appellant. There had been a considerable rain about the time of the assassination. Appellant stated to the sheriff and his posse that he had been out in a calf pasture when the rain came up and in that way he accounted for the condition of his clothes.

The testimony disclosed that appellant had been to the house of Taylor on the day of the assassination. It further disclosed that the deputy sheriff who was assassinated had arrested appellant on that day. There was some proof that appellant had made threats against Fee and had used language showing that he would like to see Fee removed from activities in the community. On his trial appellant showed by his evidence and the evidence of others in his behalf that no ill feeling had ever existed between him and Fee. He further showed by much testimony that at the time of the killing he had gone across the mountain five miles to ascertain whether his wife had reached the home of their son. He claimed that he was at the home of his son five miles across the mountain about the time of the assassination, and this he established by proof. He testified that he was caught in a heavy rain as he returned home and in that way accounted for the condition of his clothes at the time of his arrest.

Two grounds only are urged for reversal by appellant. The first is that the verdict is flagrantly against the weight of the evidence, and that he should have been granted a new trial for that reason. We cannot say that the verdict of the jury is flagrantly against the weight of the evidence. There was enough evidence to take the case to the jury and to uphold its verdict.

The complaint about the evidence relates to the dying declaration of James Fee. It is abundantly proven that

Fee recognized his impending dissolution. He said to the sheriff and those present at the time: "I am killed; Jack Stevens killed me." He also told the sheriff to arrest Jack Stevens. That statement was withdrawn from the jury by the court with proper admonition. Others testified that later Fee said: "I am killed; I believe Jack Stevens shot me." The court withdrew this evidence from the jury with proper admonition. That which was left for consideration of the jury was the statement made to the sheriff in the presence of his deputies: "I am killed; Jack Stevens killed me."

Appellant argues with much force that this evidence should not have been admitted. Fee offered no reason to support his statement that Jack Stevens killed him. Such evidence as a dying declaration ordinarily, is competent; but it is argued in this case that the physical facts and surrounding circumstances as developed by the testimony show conclusively that Fee could not have known whether Jack Stevens fired the fatal shots. All of the witnesses testified that it was dark at the time of the assassination, and there is no evidence tending to show that Fee could have seen the assassin under the floor of the Taylor house at the time the shots were fired. In addition to the darkness the corn growing in the garden obstructed the view. If the evidence discloses that he could not have seen the assassin at the time he was shot and that he could not have recognized appellant as the man who fired the fatal shots, then his statement that Jack Stevens killed him was an expression of an opinion and the expression of an opinion is not competent as a dying declaration. The statements of a dying person can be admitted as his dying declaration only when the statements relate to the manner and circumstances of the infliction upon him by another of injuries resulting in his death. Wagner v. Commonwealth, 108 S. W. 320, 32 Ky. Law Rep. 1185.

The instant case falls within the rule announced in Green v. Commonwealth, 18 S. W. 515, 13 Ky. Law Rep. 897. In that case one Davidson had been shot from ambush and immediately after he was shot he made the statement that he did not know who shot him, but later he said to his daughter: "Your Uncle George shot me." His statement was admitted by the trial court as his dying declaration, but this court held the evidence incompetent. This court in that case took occasion to say that a trial court should be careful in admitting such testi-

mony when it is doubtful whether the statement was one of fact known to the dying person or an attempt to establish a fact upon the mere belief that the crime must have been committed by a particular person. It was there held that, if the statement was the mere opinion of the dying person, it would be incompetent, and that such a statement should not be allowed as evidence if there was doubt as to whether the declarant was expressing an opinion or attempting to state a fact. If the facts and circumstances in this case showed that Fee had an opportunity to know whether appellant fired the shots, his statement in the form made would be admissible; but where it is shown by all of the surrounding circumstances that he could not have known whether it was the appellant who fired the shots, it follows that his statement was merely his opinion, and it should not have been admitted.

It is insisted by the Attorney General that, although the dying declaration may have been incompetent, it was not prejudicial, as the evidence tending to show the guilt of appellant was amply sufficient without the dying declaration. We cannot agree with this argument. The evidence against appellant was wholly circumstantial and the admission of the statement made by the dying man who had been assassinated, that appellant had killed him, was prejudicial. The court will not allow the statement of Fee on another trial, unless it should be shown that he had an opportunity to know as a matter of fact that appellant fired the fatal shots.

No other errors are complained of, but the error as to the admission of the evidence is sufficient to compel a reversal of the judgment of the lower court.

Judgment reversed, and cause remanded for proceedings consisted with this opinion.