## Alford v. Commonwealth.

(Decided April 19, 1932.)

28

CHAS. B. SPICER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for Commonwealth.

OPINION OF THE COURT BY JUDGE RICHARDSON— Affirming.

This appeal presents for review the admissibility as evidence of certain portions of a dying declaration, and the ruling of the court on a motion for a new trial on the ground of newly discovered evidence.

The appellant shot and killed Ap Williams for which he was indicted for willful murder, convicted of voluntary manslaughter, and sentenced to the penitentiary for a period of ten years.

Mrs. Ap Williams, Henry Noe, Bill Noe, Lester Williams, and George Williams were present at the time

of the killing. They testified in behalf of the commonwealth. As the two shots were fired by the appellant, which produced the death of Ap Williams, Henry and Bill Noe claim they ran from the scene. Mrs. Ap Williams, Lester and George Williams claim they remained. They claim that the deceased did not have at the time a pistol, which appellant claims he had in his hand immediately before and at the time the two shots were fired by him. George Williams was twelve years of age at the time. He claims that he was sitting in a car within a few feet of the appellant and Ap Williams at the time the appellant fired the two shots; that immediately he ran into the house and obtained a pistol, returned, and gave it to his father, Ap Williams, who fired it at the appellant.

During the day on which the tragedy occurred, Ap Williams had been away from home, at different places, in the presence of Jonah Mitchell, Mrs. Jonah Mitchell, Finley Smith, and Willis Johnson, and perhaps others, who claim they observed a large pistol on his person. When he returned home the appellant was present. He had been at the home of Williams about thirty minutes before Williams returned. On returning to his home, Williams came by his residence, passed the appellant, and "laid something on the porch," then he returned to where the appellant was, and remained until the shooting occurred. Thus the deceased's possession of the pistol when away from home during that day, as well as the fact that he did not enter his home after his return and before the shooting occurred and leave the pistol where George Williams claims he obtained it after the appellant fired the two shots, is abundantly shown. The appellant claims the deceased first drew his pistol and made a demonstration to shoot him before he fired the two shots. The testimony of Jonah Mitchell and Mrs. Jonah Mitchell, Finley Smith, and Willis Johnson, together with the fact that the deceased did not enter his home after his return thereto before the shooting began, strongly corroborates the theory of the appellant, although the testimony of George Williams tends to contradict it.

In support of his motion for a new trial predicated on the ground of newly discovered evidence, he filed the affidavits of Pearl Holcomb, Lily Belle Cook, John Holcomb, and Jim Holcomb, wherein it is stated that on

December 7, after the appellant's conviction, Lester Williams and Mrs. Ap Williams stated to each of them that "they put the thing over defendant on the trial, and that they got the little boy, George Williams, to testify, and tell what he did tell on the trial, and that he got by mighty well to be swearing a lie, that is that Ap Williams did not have his pistol at the time he was killed, and fire the first shot."

It should be conceded that these statements of the witnesses are no more than additional testimony tending to contradict the testimony of George Williams, Mrs. Ap Williams, and Lester Williams, relating to the deceased not having possession of the pistol before nor at the time the appellant fired two shots at Ap Williams.

The affidavits of these witnesses contain the further statement that they had heard the deceased a short time before the killing make certain threats against the appellant.

Subsection 7 of section 340 of the Civil Code of Practice, which is applicable in criminal prosecutions, provides that a new trial may be granted on the ground of newly discovered evidence, material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial. The effect of this Code provision, on an application for a new trial on the ground of newly discovered evidence, is, it requires that the affidavit of the witness as to his evidence and also of the applicant must show that he did not know, and in the exercise of reasonable diligence could not have known, of such evidence before the trial. The omission thereof from the affidavit of the witness and of the appellant of such statement is fatal. Montgomery v. Com., 220 Ky. 311, 295 S. W. 153; Ellis v. Com., 146 Ky. 715, 143 S. W. 425.

It is not shown in the affidavits of the witnesses, nor in the affidavit of the appellant, that this rule of practice was recognized and complied with relative to the alleged threats made by the deceased against the appellant in the presence of these witnesses.

The above rule is not applicable to and does not control the statements of these witnesses relative to those made to them by Mrs. Ap Williams and Lester Williams, subsequent to the appellant's trial. The statements of these witnesses in this respect are merely cumulative,

impeaching evidence tending to contradict their testimony that deceased had no pistol until George Williams gave it to him. Newly discovered evidence merely cumulative will not authorize a reversal. May v. Com., 153 Ky. 141, 154 S. W. 1074; Jones v. Com., 158 Ky. 533, 165 S. W. 673; Lewis v. Com., 190 Ky. 160, 227 S. W. 149. Nor will this court reverse a judgment of conviction merely to permit a witness to be contradicted, where there appears, in the record, other contradictory evidence. A number of witnesses testified to certain dying declarations made by the deceased. It is not contended that the evidence failed to show that the deceased was in extremis at the time the declarations were made, sufficient to bring them within the familiar rule applicable in such cases. See Petty v. Com., 178 Ky. 483, 199 S. W. 20, Barton v. Com., 238 Ky. 356, 38 S. W. (2d) 218.

This statement was made by deceased as a part of his dying declaration:

"Mamma, no use for me to pray, I am too far gone; Mamma don't worry about me, live the best you can and take care of our little children, he shot a deathly shot."

Lawrence Skidmore and Mrs. Ap Williams were permitted to narrate, as a part of the dying declaration of the deceased, the following:

"He said that he sold Mitchell Alford a pair of gears three or four months before this happened and he never would pay him for them, and he passed by his house that evening and he went down to his house to get them and he was not there and he asked his wife about them, and said his wife went down and got a pair of gears and gave them to him, and she said, 'If these are not yours, you and Mitchell can exchange them the next time you go back.'"

A dying declaration is admissible on the theory that it is a statement of material facts concerning the cause and circumstances of the homicide, made by the victim under the solemn belief of impending death, and should be confined to the facts and circumstances constituting the res gestae of the decedent's destruction. Lucas v. Com., 153 Ky. 424, 155 S. W. 721; Ulrich v. Com., 181 Ky. 519, 205 S. W. 586; Winstead v. Com., 195 Ky. 484, 243

S. W. 40; Mays v. Com., 200 Ky. 678, 255 S. W. 257; Farley v. Com., 218 Ky. 435, 291 S. W. 734.

Though only that portion of a dying declaration which relates to the homicide is competent as a part of the res gestae, yet what the declarant stated at or about the time the declaration is made, which shows that he was rational and understood what he was doing, or shows that he would not live and was conscious of that fact, is also competent. The declaration of the deceased relating to the subject of prayer and the mortal wound which he had suffered, was admissible under this rule. Allen v. Com., 134 Ky. 110, 119 S. W. 795, 20 Ann. Cas. 884; Stevens v. Com., 221 Ky. 222, 298 S. W. 678

The statement of the deceased concerning his obtainment of the gears from the appellant's wife, and her statement to him relative thereto, do not relate to the circumstances of the killing nor constitute a part of the res gestae. However, it was shown by the commonwealth without objection on the part of the appellant that the topic discussed by appellant and the deceased immediately preceding the firing of the fatal shots was the "gears." In his testimony the appellant recited in detail the transaction between him and the deceased concerning the gears alluded to in the declarations of the deceased. That portion of the declaration to which the appellant objected, and now complains against, related to his procuring the gears at the home of the appellant. Other testimony in behalf of the commonwealth as well as that of the appellant concerned the same subject matter. Therefore, even though incompetent, the evidence complained against was not prejudicial, sufficient to justify a reversal on that ground. Stafford v. Com., 212 Ky. 229, 278 S. W. 574; Gatewood v. Com., 215 Ky. 360, 285 S. W. 193. The portion of the declaration of the deceased which is complained of by appellant was substantially detailed by him in his narration of the transaction between him and the deceased concerning the gears, and for this reason it was not prejudicial. Ellis v. Com., 146 Ky. 715, 143 S. W. 425; Garrison v. Com., 169 Ky. 188, 183 S. W. 473; Bennett v. Com., 175 Ky. 540, 194 S. W. 797; Tester v. Com., 229 Ky. 403, 17 S W. (2d) 260; Rush v. Com., 241 Ky. 306, 43 S. W. (2d) 713.

The appellant complains of no other errors.

Judgment affirmed.