# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: NOVEMBER 25, 2009
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2008-SC-000814-MR

12/16/09  Kelly Klabus D.C.

ROBBIE LYNN SCOTT
                                                    APPELLANT


|       | ON APPEAL FROM BARREN CIRCUIT COURT |
|-------|-------------------------------------|
| V.    | HONORABLE PHILLIP R. PATTON, JUDGE  |
|       | NO. 08-CR-00038                     |


COMMONWEALTH OF KENTUCKY                                    APPELLEE


## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Robbie Lynn Scott was convicted of first-degree rape and sentenced to thirty-five years' imprisonment. Scott contends the trial court erred when it denied his motion for a new trial based upon alleged perjury. We disagree.

Scott was indicted for raping his juvenile niece, A.W., and for being a persistent felony offender in the first degree (PFO I). The charges proceeded to a jury trial. Among other evidence presented at trial, A.W. testified that on four different occasions, Scott inserted his penis into her vagina. Additionally, John Edward Michael, a former cellmate of Scott's, testified that Scott had bragged to him about having sexual intercourse with A.W. Michael also testified that he did not have prior knowledge of A.W. or her father, Michael Whitlow. Although there was no DNA evidence against Scott, a physician did testify that he found

in A.W.'s vaginal area a scar that was consistent with sexual intercourse. Scott testified on his own behalf and denied raping A.W. or having discussed his charges with Michael. Ultimately, the jury found Scott guilty of first-degree rape and of being a PFO I.

Five days post-trial, Scott filed a motion for a new trial. The crux of that motion was his contention that he had discovered new evidence showing that Michael had committed perjury when he testified that he had had no previous knowledge of Whitlow. The trial court conducted a brief evidentiary hearing on Scott's motion for a new trial.

At that evidentiary hearing, Scott's father testified that he had seen Whitlow and Michael speaking during and after Scott's trial; but he could not make out the details of those conversations. Scott's father also testified that he thought he had seen Whitlow and Michael together before the trial, but Scott's father stated he was not sure that the people he had seen together before the trial were Whitlow and Michael. Particularly damning to Scott's motion for a new trial, Scott's father stated that he told someone at Scott's counsel's table during the trial that he had seen Michael and Whitlow conversing.[1]

Similarly, Scott's brother's girlfriend testified at the hearing that she had seen Michael speaking with Whitlow after Michael had first testified (he apparently was recalled to testify later) but could not discern what was said during that conversation. Likewise, Scott's ex-wife, who was also Whitlow's

---

[1] In his reply brief, Scott states that the person Scott's father had told about witnessing the conversation between Whitlow and Michael was a law clerk.

2

sister, testified that she had seen Whitlow and Michael speaking during Scott's trial.

Whitlow also testified at the post-trial evidentiary hearing. He admitted speaking to Michael after Michael testified during Scott's trial and introducing himself to Michael at that time. But Whitlow denied knowing Michael before trial.

After the attorneys made their arguments at the close of the evidentiary hearing, the trial court denied Scott's motion for a new trial and proceeded to sentence Scott to thirty-five years' imprisonment in accordance with the jury's recommendation.[2] This appeal followed.[3]

The only issue raised by Scott is his contention that the trial court erred by denying his motion for a new trial. We disagree.

---

[2]   It would have been better practice for the jury to have been instructed to return a recommended sentence on the rape conviction before addressing the PFO charge and any consequent PFO-enhanced sentence. Commonwealth v. Reneer, 734 S.W.2d 794, 798 (Ky. 1987) ("If the accused is also charged as a persistent felony offender, the penalty phase and a persistent felony offender phase can be combined . . . and the jury in the combined bifurcated hearing could be instructed to (1) fix a penalty on the basic charge in the indictment; (2) determine then whether the defendant is guilty as a persistent felony offender, and if so; (3) fix the enhanced penalty as a persistent felony offender."). However, since the failure to recommend a sentence for the underlying rape conviction has not been raised by the parties as an issue and because this case is not otherwise being remanded, we decline to remand for a new sentencing *sua sponte. See, e.g.,* Owens v. Commonwealth, 291 S.W.3d 704, 706 n.5 (Ky. 2009) (noting that "[n]either the jury nor the trial court assessed a separate penalty for the possession of a controlled substance conviction" but not *sua sponte* remanding case to trial court for re-sentencing.).

[3]   *See* Ky. Const. § 110(2)(b).

"Whether to grant a new trial on the basis of newly discovered evidence is largely within the discretion of the trial court . . . ."[4] A party claiming entitlement to a new trial based upon newly discovered evidence faces a high burden as "newly discovered evidence that merely impeaches the credibility of a witness or is cumulative is generally disfavored as grounds for granting a new trial."[5] Instead, a new trial based upon newly discovered evidence is appropriate only if the new evidence is "'of such decisive value or force that it would with reasonable certainty, change the verdict or that it would probably change the result if a new trial should be granted.'"[6] A motion for a new trial based upon newly discovered evidence "must be accompanied by an affidavit showing that Appellant exercised sufficient diligence to obtain the evidence prior to his trial."[7] We, as an appellate court, may reverse a trial court's decision to deny a motion for a new trial only if the trial court's decision is an abuse of discretion.[8]

We have not been directed in the record to, nor have we independently located, any affidavit showing that Scott made reasonably diligent efforts to obtain the allegedly newly discovered evidence before trial. So we could summarily dismiss this appeal. But even if we exercise leniency by not dismissing this appeal, Scott's claim must fail.

---

[4] Foley v. Commonwealth, 55 S.W.3d 809, 814 (Ky. 2000).

[5] *Id.*

[6] Collins v. Commonwealth, 951 S.W.2d 569, 576 (Ky. 1997) (*quoting* Coots v. Commonwealth, 418 S.W.2d 752, 754 (Ky. 1967)).

[7] Collins, 951 S.W.2d at 576.

[8] Foley, 55 S.W.3d at 814.

It is uncontested that Scott's father told someone working on Scott's behalf during Scott's trial that Michael had been talking to Whitlow. The fact that Scott's father allegedly spoke to a law clerk, rather than to Scott's attorney, does not excuse Scott's counsel's apparent failure to explore timely Michael's familiarity with Whitlow. In other words, once Scott's father reported seeing Michael conversing with Whitlow, Scott's counsel could have taken steps to delve sufficiently into that allegation to determine if Michael had testified untruthfully. Thus, we conclude that the allegedly newly discovered evidence was not really newly discovered. Instead, it seems that the bulk of the allegedly newly discovered evidence presented at the hearing was, in actuality, discovered during the trial—or reasonably should have been discovered during the trial—but not acted upon until after the trial.

Even if we were to assume, solely for purposes of argument, that the evidence in question met the definition of newly discovered evidence, Scott still would not be entitled to relief. At most, the hearing on Scott's motion for a new trial showed that Michael had one or two discussions with Whitlow during Scott's trial. No witness testified that those discussions had anything to do with the substance of Michael's testimony or that those discussions influenced Michael's testimony in any manner. At most, Scott presented evidence that would have impeached Michael's credibility.

As previously stated, mere impeachment-type evidence is generally insufficient to necessitate granting a defendant a new trial.[9] We reject Scott's

---

[9]   *Id.*

5

claim that the evidence in this case is "precisely the sort of impeachment evidence this Court should find 'decisive enough' to be at least 'reasonably' certain to alter the jury's recommended sentence." To the contrary, the evidence in question would show (at most) that Michael was not telling the truth when he denied knowing Whitlow or A.W.'s family. Also, perhaps, the testimony presented at the hearing could have suggested that Michael could have learned facts about Scott's life, including Scott's wife's place of employment, in a manner other than having conversed with Scott.

Much was made at trial of Michael's testimony of Scott's wife's employment at a local K-Mart store. The Commonwealth contended that Michael's knowledge of Scott's wife's place of employment showed that Michael had actually talked to Scott because that fact was not in any discovery materials Michael could have seen in the cell he once shared with Scott. At the evidentiary hearing, Scott's ex-wife[10] testified that she had spoken with another of Scott's ex-cellmates, who claimed that he and Scott had discussed Scott's case while Michael was within earshot. All of this K-mart-related evidence, however, is, at most, impeachment of Michael's credibility.

Michael's relationship, if any, with the victim or her family was a collateral issue; and presentation of evidence on that issue would not have been reasonably certain to alter the jury's verdict, whether that evidence is

---

[10] The woman who had been employed at K-Mart and who was apparently still Scott's wife at the time of trial described herself as his "ex-wife" at the time of the post-trial evidentiary hearing. In other words, his wife at trial was the same person as the "ex-wife" at the evidentiary hearing.

strictly classified as newly discovered evidence or is more loosely classified as evidence of a witness's perjury. Instead, the evidence in this case is precisely the type of evidence that falls squarely within the general rule that evidence impeaching a witness is insufficient to merit a new trial.

This Court has concluded many times that a new trial was not warranted in cases presenting much stronger newly discovered evidence, including cases in which there were affidavits attesting that the defendant was innocent.[11] The trial court, therefore, did not abuse its discretion when it denied Scott's motion for a new trial; and so we decline Scott's request to remand this case for either a complete new trial or, alternatively, a new sentencing phase.

For the foregoing reasons, the judgment of the Barren Circuit Court is affirmed.

All sitting. All concur.

---

[11] *Id.* ("In Epperson v. Commonwealth, [809 S.W.2d 835 (Ky. 1991)] . . . the motion for a new trial was premised upon affidavits from prison inmates alleging, as here, that the prosecution's chief witness had admitted to them that he, not the defendant, had killed the victim. The affidavits were deemed to be merely impeaching and insufficient to require a new trial. In Coots v. Commonwealth, *supra*, evidence that the prosecutrix had made a post-trial statement to a police officer that the defendant had not molested her was held to be merely impeaching and not to require a new trial. Denials of motions for new trials were also upheld in Parsley v. Commonwealth, Ky., 321 S.W.2d 259 (1958) (evidence that the prosecutrix's mother later admitted that she had mistakenly identified the defendant as the person who raped her daughter tended only to impeach); Jeter v. Commonwealth, 268 Ky. 285, 104 S.W.2d 979 (1937) (alleged post-trial statement by prosecution's chief witness that contradicted his trial testimony with respect to whether the defendant killed the victim in self-defense was merely impeaching); Alford v. Commonwealth, 244 Ky. 27, 50 S.W.2d 1 (1932) (alleged post-trial statements of prosecuting witnesses contradicting their trial testimony that the victim was unarmed when he was shot was cumulative and impeaching).").

COUNSEL FOR APPELLANT:

Susan Jackson Balliet
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, Kentucky 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Joshua D. Farley
Assistant Attorney General
Attorney General's Office
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204