JUDGE LINDSAY
delivered the opinion oe the court.
Michael Luby was indicted for the murder of Patrick O’Brien, and upon his trial in the Fayette Circuit Court was convicted of manslaughter, and adjudged to be confined in the penitentiary for the term of ten years.
To reverse that judgment he prosecutes this appeal.
Luby and O’Brien were'unfriendly, and the former had forbidden the latter to come to his house.
*4 On the day of the shooting, which was Sunday, the deceased (at the time slightly intoxicated) went to Luby’s house, for the purpose, as he stated, of settling some question of veracity then pending between them. He was denied admission into the house, and admonished by the wife of Luby to ■ go away. He left, and returned, certainly once and probably twice. It is proved by one witness that while in front of the door of the house the deceased said to Mrs. Luby “he would not go away until he made him take it back,” and by another that he said to her, “ he would not go away, and that he (Luby) should not come out of that door until he took it back,” and by still another witness that he “ heard O’Brien’s voice in a loud and angry tone saying he would kill him before night if he did not take it back.”
A short time after this O’Brien entered the house of Luby, and almost immediately two or three shots were fired. He then came out and turned the corner of the street, and in an instant Luby followed, asking, “Where is he?” O’Brien walked hurriedly, and leaned over as though he was hurt. He walked at a moderate pace, and Luby followed in a quick walk, and fired at the deceased three times in the street. Persons in the vicinity called out to O’Brien to run, and to Luby not to shoot. The proof shows the character of Luby to be that of an orderly and peaceable man.
The first question to be considered is the admissibility of certain testimony objected to by the appellant.
After the shooting the witness Wilgus went with the prisoner into his house, and there discovered that Mrs. Luby had been shot. He was allowed to state to the jury that he then said to Luby, “ That it was a sad accident, Mrs.' Luby getting shot; and Luby said it was not an accident, that he told her to get out of the way, and that she did not get out of the way, and he had shot her.” It being in proof that Mrs. Luby was struck by one of the shots fired in the house, it was com *5 petent for the commonwealth to prove that Luby had admitted that he fired that shot, to meet and rebut any presumption that might otherwise have arisen that it was fired by the deceased. But it was improper to permit the witness to state the reasons assigned by Luby for his action in this regard. The proof as to these reasons conduced to show that the prisoner shot his wife intentionally, and this fact necessarily tended to magnify, in the estimation of the jury, the turpitude of the act for which he was on trial, and to inflame the minds of the jurors against him. This was realized by the circuit judge, and after the evidence had been admitted he stated orally to the jury, “That the shooting of Mrs. Luby would be made the cause of another prosecution, and the jury must not permit any proof as to it, to aggravate or palliate the offense for which the prisoner was now being tried.”
This admonition did not amount to a total exclusion from the consideration of the jury of the incompetent testimony. It restricted the purposes for which it might be considered, it is true; but as it was incompetent for any purpose, it should have been unconditionally excluded. This oral explanation or instruction was not objected to; but as the commonwealth relies on it as curing the error committed in allowing the incompetent evidence to go to the jury, it may be considered in that connection. It is objectionable because it warranted the jury in assuming that the shooting of Mrs. Luby was, under the circumstances, an indictable offense, for which the prisoner ought to be tried (a matter with which they had nothing to do), and because the court in effect assumed that the act for which the prisoner was then on trial was a public offense, a question for the jury and not for the court to determine. The explanation, therefore, did not cure, but rather aggravated the error complained of.
Certain statements of the deceased were admitted as dying declarations. It seems clear that they were made by the *6 deceased under a sense of impending dissolution; but it is objected that they are each and all, not only incomplete, but practically unintelligible.
The statement to the effect “ that it was too bad to call or coax a man into your house and shoot him” was responsive apparently to a question asked the deceased by the attending physician relative to the shooting, and proof of it was prbperly admitted. But the expressions or ejaculations of the same import proved by Fitzgerald and Mrs. Luby were not connected with any statement antecedent or subsequent, and were not responsive to the inquiries or suggestions of any one. They stood alone and were wholly unexplained, and they are too vague and indefinite to amount to evidence. The court ought not to have allowed the wetnesses to prove them.
Upon the subject of the right of self-defense the court gave the following instruction:
“If the jury believe from the evidence that Luby, from all the circumstances in the case, believed, and had reasonable ground to believe, that O’Brien had sought him out for the purpose of killing him or doing him great bodily harm, and that he was prepared to carry out such purpose, and made demonstrations manifesting an intention to commence an attack, then the prisoner was not obliged to retreat, but had the right to defend himself; and if in so doing it was necessary, in order to protect himself from the impending danger, that he should kill his antagonist, the killing is excusable on the ground of self-defense,'and they ought to acquit.”
This is substantially the instruction that this court said ought to have been given in the late case of Holloway, upon consideration of the facts which the evidence in that case conduced to prove. But this case differs from that of Holloway in some very material particulars.
Here there is evidence conducing in some degree to prove that the deceased was armed with a knife, and that he assaulted *7 the prisoner in his own house. If such was the case, the right of Luby to stand and defend himself is beyond all question.
But after the deceased had retired from the house the prisoner, as he claims, in repelling the attack, followed him into the street, and pursued and continued to shoot at him, although he was then apparently retiring from the combat.
The instruction quoted at length recognizes the right of the prisoner, upon the hypothetical state of facts therein set out, to stand and make defense, even to the killing of his assailant; but it practically excludes the idea that the proof before the jury was of a character to warrant even an inquiry as to whether it was necessary, or reasonably appeared to the prisoner to be necessary, that he should pursue and shoot his assailant.
''A person free from fault when attacked by another, who manifestly intends by violence to take his life or do him great bodily harm, is not only not obliged to retreat, “ but may pursue his adversary until he has secured himself from all danger; and if he kill him in so doing, it is justifiable self-defense.” (1 East’s P. C. 271, 272.)
This conservative rule is sanctified by time, and has always been recognized and upheld by this court. The right, even in the most extreme case, to pursue and kill a retreating assailant is one which ceases as soon as the assailed has reasonable ground for believing that the danger has ceased to be immediate and impending; but as such right is essential to make perfect and complete the great natural right of self-defense, its existence must be recognized by the court in all cases in which the evidence is of a character to make it a legitimate subject of consideration by the jury.
The court failed to recognize its existence in this case, and by so doing determined in effect, that although O’Brien may have made an unprovoked and murderous attack upon the prisoner in his own house, still, as matter of fact, when the *8 latter pursued him into the street he had reasonable grounds to believe that O’Brien had in good faith withdrawn from the combat, and that the danger had then ceased to be immediate and impending.
This question of fact was one for the jury, and not for the court to decide.
The instructions asked for by appellant, in which it was attempted to have the jury instructed as to the law applicable to so much of the testimony as proved the pursuit by the prisoner, were objectionable in some respects, and were properly refused; but as the court gave the instruction we have considered in lieu of those asked, it should have been made comprehensive enough to embrace the whole law applicable to this branch of the case.
We see no error other than the one pointed out in the action of- the court in giving and refusing instructions.
For the reasons herein stated the judgment is reversed, and the case remanded for a new trial upon principles consistent with this opinion.