## Commonwealth v. Griffith.

(Decided September 20, 1912.)

### Appeal from Marshall Circuit Court. .

Criminal Law—Statements Made by Deceased Shortly Before Death—When Inadmissible as Dying Declaration.—The statements of appellant's husband as to his having been poisoned, made shortly before his death, were properly excluded by the trial court, as they were incompetent as a part of the res gestae because not connected with sufficient closeness to the taking of the poison by deceased; and also incompetent as dying declarations because not made by him under the belief or expectation of approaching dissolution. It is the impression of almost immediate dissolution, not the rapid succession of death, in point of fact, that renders the testimony admissible as a dying declaration; therefore, where it appears that the deceased at the time of the declaration, had any expectation or hope of recovery, however slight it may have been, and though death actually resulted in an hour afterwards, the declaration is inadmissible. On the other hand, a belief that he will not recover is not in itself sufficient unless there be also the prospect of almost immediate dissolution. In addition to their incompetency on the grounds indicated, deceased's declarations were also incompetent because they were mere expressions of opinion, and not statemnts of fact.

JOHN G. LOVETT, JAMES GARNETT, Attorney General for appellant.

BERRY & GRASSHAM, JACK E. FISHER and SHEMWELL & REIDER for appellee.

Opinion of the Court by Judge Settle—Certifying opinion as law of case.

The appellee, Lucy Griffith, was indicted in the court below for the murder of her husband, Ed Griffith, who died suddenly from symptoms indicating that he was poisoned. When the case was tried, the jury failed to agree upon a verdict, which resulted in a continuance of the case for another trial. On the trial that was had, certain evidence attempted to be introduced for the Commonwealth, was excluded by the Circuit Court on the ground that it was not competent. These rulings of the court were excepted to by the Commonwealth, and it has prosecuted an appeal therefrom for the purpose of having this court determine whether that court erred in excluding the evidence in question.

It is the theory of the Commonwealth that the death of appellee's husband was caused by drinking brandy containing strychnine, which she had placed in it for the purpose of poisoning him; her motive for that act being, as alleged, to kill the husband that she might become the wife of another man, with whom it was claimed she sustained improper relations. The testimony of the exclusion of which the appellant complains, as shown by the several avowals found in the record, is as follows:

Question, propounded by Guy Wallace and E. L. Cooper, who arrived at the house of deceased shortly after he had taken the brandy:

"Well, did he say anything? If so, what?"

To this question, it was claimed that the witnesses would have answered that deceased said:

"She has poisoned me."

To Guy Wallace the following question was propounded:

"Did you hear him say anything to his father when he came in, and if so, what?"

To which it is claimed the witness would have answered:

"Deceased said to his father, 'I have been poisoned,' whereupon the father said, 'O, Eddy, I hope not.' Deceased then replied: 'I know what I am talking about. I never told you a lie in my life, and I know I have been poisoned, and she has poisoned me.' "

Dr. Van Stilley was asked what deceased said to him, to which it is claimed he would have answered: "Griffith then motioned to me to come to him and I got close to him and he said, 'I have been poisoned; I will get over this, won't I?' I said, 'I hope you will' or 'I think you will.' He says, 'When I do I want to tell you something on the square.' "

It is insisted for the Commonwealth that this testimony should have been admitted for the reasons:

First—That they were part of the res gestae.

Second—That they were dying declarations.

The first contention is manifestly untenable. The statements attributed to the deceased were not shown by the evidence to have been so immediately connected with his act of drinking the brandy as to render them competent as a part of the res gestae. Indeed, the testimony is very indefinite as to the time that intervened between the drinking of the brandy by deceased and the declarations in question. It is true that the witnesses, Wallace and Cooper, testified that they saw deceased near his house about ten minutes before the statements attempted to be introduced as evidence were made by him, but it does not appear from their testimony, or any other evidence in the case, whether he drank the brandy said to have contained the strychnine before or after they met him.

In Williams v. State, 130 Ala., 107, it was held on a trial under an indictment for murder, testimony as to what passed between deceased and the defendant several minutes after the shooting, and while the former was lying on the ground helpless, constituted no part of the res gestae of the shooting and is inadmissible in evidence. In passing on the competency of like testimony in State v. Charles, 111 La., 935, the court said: "When nine or ten minutes after the shooting the wounded man having been taken to a physician, about three hundred yards, or the physician summoned, the physician said to the wounded man, 'Before I put my hands on you, who did the shooting?' the statement of the wounded man was not a part of the res gestae." (Jones on Evidence, 2nd Edition, section 345.)

It is equally clear that the statements of the deceased were not competent as dying declarations. It is well settled that evidence of this character to be admissible as dying declarations, must be made when the

party is in extremis and has given up all hope of this life; but whether this be so or not may be determined not only by what he may say, but by his evident danger and all the surrounding circumstances. The injured party need not in express words declare that he knows that he is about to die, or make use of equivalent language, but if any expectation or hope of recovery exists, however slight in the mind of the injured person, they are inadmissible. No better statement of the doctrine can be found than is announced in I Greenleaf on Evidence, section 158, where it is said:

"It is the impression of almost immediate dissolution, not the rapid succession of death in point of fact, that renders the testimony admissible; therefore, where it appears that the deceased at the time of the declarations, had any expectation or hope of recovery, however slight it may have been, and though death actually ensued an hour afterwards, the declaration is inadmissible. On the other hand, a belief that he will not recover is not in itself sufficient unless there be also the prospect of almost immediate dissolution." (Peoples v. Commonwealth, 87 Ky., 487; Commonwealth v. Matthews, 89 Ky., 202; Jones v. Commonwealth, 20 R., 355.)

It nowhere appears from the bill of evidence that any foundation was laid for the purpose of establishing the competency of deceased's statements. Not only was he not advised of approaching dissolution, but it does not appear that he was advised of the probability of death; on the contrary, it appears from the evidence that the physician, Dr. Van Stilley, the only person who had any conversation with him on the subject of his sufferings or death, told him that he hoped or believed that he would recover.

In addition to what we have already said in respect to the incompetency of this evidence, we may add that it was also incompetent because the statements made by deceased were but expressions of opinion. In Collins v. Commonwealth, 12 Bush, 271, in which the competency of similar declarations were under consideration, we, in the opinion, said:

"It is by no means clear that the deceased made the statement allowed to be proved as a dying declaration under a sense of impending dissolution. But if they were provable in that regard, they ought to have been excluded from the jury for another reason. They were

in substance, 'That Michael Collins killed me, and killed me for nothing;' that 'I never carried anything to hurt anyone.' * * * * The statement that Collins killed the deceased 'for nothing' was but the expression of an opinion and was clearly inadmissible.''

In Green v. The Commonwealth, 13 R., 897, the deceased, who was asked by his niece shortly before his death, who shot him, answered: ''Your uncle George shot me.'' In declaring this statement incompetent, the court said:

''In other words, the expression, 'Your uncle George shot me,' may have been the opinion merely of the deceased, based upon their hatred of each other. In this case the accused had no opportunity to cross-examine this witness, the deceased, so as to elicit from him his reasons for believing the accused had shot him.'' (Luby v. Commonwealth, 12 Bush, 1; Jones v. Commonwealth, 20 R., 355.)

In view of the foregoing authorities, it is our conclusion that the evidence in question was incompetent on each of the three grounds indicated. Wherefore, this opinion is certified to the lower court as the law of the case upon the questions presented.