### Stewart v. Commonwealth.

(Decided October 21, 1930.)

J. B. SNYDER for appellant.

J. W. CAMMACK, Attorney General, and JOHN P. CUSICK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Reversing.

On the trial of the appellant, Brid Stewart, charged with murder, the evidence heard through witnesses introduced by the commonwealth was briefly this: The deceased, Cawood Brewer, was the stepfather as well as brother-in-law of the defendant. They had been living and working together for several years and were on friendly terms. On the afternoon of December 23, 1929,

the two men had been at Bill Day's home, had left and gone a short distance, turned and were walking back in the road. Bill Bales met and talked with them a moment. The defendant had a pistol in his hand, "swinging it along with his arm stretched out." It was an automatic and belonged to the deceased. Just as Bales stepped between them, the pistol fired twice, perhaps three times, in quick succession. Brewer exclaimed, "You have shot me." Stewart insisted he had not. There had been some shooting round about and fire-crackers popping in a premature celebration of Christmas. Fred Day testified he was at his home about 150 yards away and saw the defendant "moseying along" and "pull his gun and shoot three shots." Then Brewer called to him to come and get him. He was taken to Day's house, but removed to a hospital where he died that night. He had two bullet holes in his body, entering the right side, on which side the defendant was walking.

The deceased's brother was permitted, over objection, to testify that three or four years before his death his brother and wife (defendant's mother) were quarreling as they approached the common home, and the defendant got up from the front porch and went to the back porch and returned with a Winchester rifle, and he "just throwed the gun up." Brewer had a pistol in his hand, and, when witness went to him, Stewart took his gun back in the house. He had said nothing. That was the only trouble witness ever knew of them having.

After testifying to their kinship and friendship, and to the fact that he had supported his mother and the deceased when he was out of work, the defendant stated that they had been up to Red Wine tunnel, where Brewer got some whisky. He admits that he had a drink or two, but denies that he was intoxicated. The deceased owned a German automatic pistol, and as they were walking along he asked to see it. He had been looking at it and was carrying it in his hand with his arm swinging down when some colored men just off the road began shooting, and Brewer said, "Give me my pistol." While watching the other men, he reached out his arm to hand the weapon to Brewer and it fired once, as he thought. He knew nothing of a safety device or its mechanism, and insisted that it was discharged unintentionally. While

going hastily for his mother, the pistol, he said, evidently dropped out of his pocket and was lost.

The court instructed the jury on murder and the different degrees thereof, including voluntary manslaughter based on sudden heat and passion and sudden affray, and also on the reckless and careless handling of a deadly weapon. The jury found the defendant guilty under the latter instruction, as the verdict stated, and fixed his punishment at confinement in the penitentiary for 21 years. Instructions on involuntary manslaughter, accidental killing, and reasonable doubt were also given.

1. It is urged strenuously that the evidence did not authorize the instruction on voluntary manslaughter based on the reckless, wanton, or grossly careless use or handling of the weapon under which defendant was found guilty. We need not enter upon a discussion of this point, nor the distinction to be drawn between voluntary and involuntary manslaughter arising from such act, deeming it sufficient to say that no error was committed in respect to the instruction.

2. But the court did commit an error, we think, in admitting the evidence as to the incident which occurred three or four years before the homicide, as above related. Assuming the act would be otherwise competent (compare secs. 1793, 1797, Roberson's Cr. Law), it was too remote in time to be relevant in this case. Gilbert v. Commonwealth, 221 Ky. 692, 299 S. W. 569.

3. The most serious and difficult question before us relates to the exclusion and rejection of statements made by the deceased that the shooting was an accident. The reason assigned by the court was that they constituted a conclusion. Some of the statements to be considered were admitted and then excluded from consideration of the jury. Others are in the record as avowals. They may be divided into five declarations, to wit:

(1) Immediately after the shots were fired, addressing the defendant: "You have accidentally shot me."

(2) After he had walked to the house: "Fred, I am shot clear through; Brid shot me;" and he was asked, "Accidental or on purpose?" and he replied, "No, accidental."

(3) · After he had been laid on the floor in Day's house, the defendant came in and kneeling down by his side said: "Kay, did I shoot you accidental or on pur-

pose?" to which he replied: 'You shot me accidental; go get Polly Ann" (his wife). Other witnesses say the conversation was this: "Kay, you know I done it accidental," and Brewer responded: "Why, Lord God, yes you did; go and tell Polly Ann."

(4)   After he had been taken to the hospital, perhaps an hour or more later, he said: "He went to hand me the gun and the gun went off and accidentally shot me."

(5)   His widow testified that that night Brewer said, under circumstances which indicated a sense of impending death, "It was done accidental."

Regardless of the competency of the subject-matter, it seems clear that the second, third, and fourth statements were inadmissible, for they do not come within either the res gestae or dying declaration rule. McGowan v. Commonwealth (Ky.) 117 S. W. 387; Philpot v. Commonwealth, 195 Ky. 555, 242 S. W. 839, 25 A. L. R. 1367; Ratcliffe v. Commonwealth, 231 Ky. 337, 21 S. W. (2d) 441.

The logic and principles of those rules are the same —that the circumstances attending the declarations or exclamations justify the presumption of truth, even as does the taking of a positive oath in court.   In the one instance it is the spontaneous impulse accompanying or following so soon after the transaction as to raise the reasonable presumption that the utterance does not spring from a motive to fabricate or serve himself, negativing the presumption of premeditation or design. Rogers v. Commonwealth, 161 Ky. 754, 171 S. W. 464; National Life & Accident Insurance Co. v. Hedges, 233 Ky. 840, 27 S. W. (2d) 422. In the other instance the statement is admitted because made in articulo mortis, when the injured person approaches death, when hope of recovery is gone and every motive to falsify is silenced, the mind being induced by the most powerful considerations to speak the truth. Petty v. Commonwealth, 178 Ky. 483, 199 S. W. 20; Roberson, sec. 439.

No different rule is to be applied to the second and third statements because they were made in the presence and hearing of the defendant. Philpot v. Commonwealth, supra.   They are not to be considered as are those which are accusatory in their nature and made under such circumstances as call for a denial by the defendant and he

remains silent or makes an incriminatory response. Merriweather v. Commonwealth, 118 Ky. 870, 82 S. W. 592, 26 Ky. Law Rep. 793, 4 Ann. Cas. 1039; Smith v. Commonwealth, 140 Ky. 599, 131 S. W. 499; Davis v. Commonwealth, 204 Ky. 809, 265 S. W. 316.

Nor can it affect the hearsay rule, which excludes them, that the statements are beneficial to the accused or self-disserving on the part of the injured person whose death is the subject of the charge, for the reason that the commonwealth is not to be regarded as in privy with him. His admission cannot bind the state. We have recently discussed the subject in its relation to parties to a civil action who were identified in interest with the declarant. Reed et al. v. Philpot's Adm'r, 235 Ky. 429, 31 S. W. (2d) —, 16 C. J. 639.

Reverting to the two declarations which we conclude conform to the rules relating to the grounds of admissibility, are the statements themselves, ''You shot me accidentally'' and ''It was an accident,'' competent?

The test of a dying declaration is that the matters would be competent only if they would be coming from a living witness. Rooney v. Commonwealth, 193 Ky. 723, 237 S. W. 403; Philpot v. Commonwealth, supra. It must refer distinctly to the cause of death and circumstances and facts producing and attending it—the res gestae—and the declarant' must have had knowledge whereof he speaks. This excludes, obviously, expressions of opinion, mental impressions, and inferences, which would not be received were the declarant a witness on the stand. Underhill Criminal Evidence, sec. 177; Roberson, sec. 463; Jones on Evidence, sec. 330; Tibbs v. Commonwealth, 138 Ky. 558, 128 S. W. 871, 28 L. R. A. (N. S.) 665; Lucas v. Commonwealth, 153 Ky. 424, 155 S. W. 721; Allen v. Commonwealth, 168 Ky. 325, 182 S. W. 176. A further potent reason for this rejection is that cross-examination might have disclosed the conclusion was without foundation. Green v. Commonwealth, 18 S. W. 515, 13 Ky. Law Rep. 897.

And for the same underlying reason the subject-matter of an exclamation admissible as part of the res gesta ought to meet the same test. It must be a substantially contemporaneous statement of one of the actors or participants (Howard v. Commonwealth, 227 Ky. 142, 12 S. W. (2d) 324, 325), and illustrate, elucidate, or explain the manner in which the thing occurred or the

cause of it. Louisville Ry. Co. v. Broaddus, Adm'r, 180 Ky. 298, 202 S. W. 654; McCandless v. Commonwealth, 170 Ky. 301, 185 S. W. 1100; Rogers v. Commonwealth, supra. Or it must be so intimately interwoven with the principal fact as to be regarded as part of the transaction itself. Davis v. Commonwealth, 77 S. W. 1101, 25 Ky. Law Rep. 1426. The exclamation must be the act talking for itself, not the person talking about the act. It must be the apparently spontaneous result of the occurrence operating upon the perceptive senses of the speaker (Illinois Cent. Ry. Co. v. Lowery, 184 Ala. 443, 49 L. R. A. (N. S.) 1149) rather than the result of reasoning from collateral facts.

We quote Underhill on Criminal Evidence, sec. 162:

"No general rule can be enunciated as to what declarations do or do not constitute a part of the res gestae. The main question is: are they relevant to, and do they explain and illustrate the facts of the transaction in issue? In other words, can we learn from them something of the motives or intention present in a relevant act? For declarations forming a part of the res gestae are only admissible when the act with which they are connected is equivocal, or its nature or purpose, its motive and meaning are doubtful, and the words of the person are invoked to render his actions clear and intelligible."

We are not aware of a case in which is discussed the precise question as to the competency as res gestæ of a statement construed as an expression of opinion. But, as suggested, it seems to us that no reason can be assigned for differentiating the subject-matter of statements admitted as res gestae, as a dying declaration, or as direct testimony. Their nature must be essentially the same. The theory in every instance is that the truth is spoken—whether it be impelled by the impulse of the moment, by the solemnity of approaching death, or by the sanctity of an oath.

All authorities are agreed on the general rule of evidence which rejects opinions or conclusions. But they are not in harmony in its application. No little difficulty often arises in classifying the statement as one of fact or one of opinion. There is no rigid line to be drawn between the two classes, and sometimes the difference is

indeed shadowy. The statements which we have here before us are of that character.

Mr. Wigmore in his vigorous and colorful style condemns the rule excluding this character of evidence, especially in dying declarations. He says (section 1919):

> "If the above principle [exclusion of opinions] is the true one, it is obvious (leaving history out of the question and considering only principle) that there is no virtue in any test based on the mere verbal or logical distinction between 'opinion' and 'fact.' There is, perhaps, in all the law of evidence no instance in which the use of a mere catchword has caused so much of error of principle and vice of policy; error of principle, because the distinction between 'opinion' and 'fact' had constantly and wrongly been treated as an aim in itself and self-justifying dogma; vice of policy, because if this specious catch-word had not been so handily provided for ignorant objectors, the principle involved would not have received at the hands of the Bar and Bench the extensive and vicious development which it had in this country."

The distinguished author criticises judicial efforts to draw a distinction between a fact and an opinion, considering, as perhaps the most careful attempt to justify the distinction, an English case (decided in 1849) in which is was said:

> "It is true that even the simplest sensations involve some judgment; when a witness reports that he saw an object of a certain shape and size, or at a certain distance, he describes something more than a mere impression on his sense of sight, and his statement implies a theory and examination of the bare phenomenon. When, however, the judgment is of so simple a kind as to become wholly unconscious and the interpretation of the appearances is a matter of general agreement, the object of sensation may, for our present purpose, be considered a fact. . . The essential idea of opinions seems to be that if it is a matter about which doubt can reasonably exist, as to which two persons can without absurdity think differently. The existence of an object before the eyes of two persons would not be a matter of opin-

ion, nor would it be a matter of opinion that twice two are four. But when testimony is divided or uncertain, the existence of a fact may become doubtful, and, therefore, a matter of opinion.''

In Chamberlayne on Evidence, sec. 2850, it is shown that statements of the character of those before us are often treated as being a very natural and obvious way of enumerating a number of inconclusive facts. Thus it is suggested that the declaration, ''He shot me down like a dog,'' is competent as a single vigorous and striking expression, summarizing in a single vivid way the manner in which the declarant was shot.

Perhaps the statement most frequently made is, ''He shot me for nothing.'' In most jurisdictions this is held to be a statement of fact. But we are firmly committed to the rule that it is to be considered one of opinion. 30 C. J. 274, 275; Underhill's Criminal Evidence, sec. 177; Philpot v. Commonwealth, supra; Eaton v. Commonwealth, 230 Ky. 250, 19 S. W. (2d) 218. However, where the expression relates to the declarant's own acts, as that he was doing nothing, it is admissible. Hunter v. Commonwealth, 221 Ky. 170, 298 S. W. 379; Strong v. Commonwealth, 216 Ky. 98, 287 S. W. 235.

In Commonwealth v. Matthews, 89 Ky. 287, 12 S. W. 333, 11 Ky. Law Rep. 505, the decedent stated that he and the defendant were playing and the shooting was an accident. It was held admissible as a statement of fact, although later cases point out that this was because of the statement that the parties were playing.

Closer to the instant case is Selby v. Commonwealth, 80 S. W. 221, 222, 25 Ky. Law Rep. 2209. The defendant, Selby, drunk, was recklessly handling a pistol; Black, the deceased, warned him not to handle it that way as he might shoot him in the back; at that instant Patterson grabbed the weapon and it was discharged; Patterson at the moment arose with the pistol in his hand and remarked, ''Boys, you see that it was an accident.'' On his trial Selby offered to prove this declaration, and also that Patterson had made the same statement to the doctor a short time later. Construing Patterson to have been a participant, it was held that his exclamation should have been admitted as res gestae, but his statement to the physician rejected as hearsay.

The court has rejected as being merely a conclusion a statement of the victim that he had been poisoned

(Mathedy v. Commonwealth, 19 S. W. 977, 14 Ky. Law Rep. 182; Commonwealth v. Griffith, 149 Ky. 405, 149 S. W. 825); that the accused aimed to shoot her (Davis v. Commonwealth, 204 Ky. 809, 265 S. W. 316); that "it was not an accident but it was only a waylay" (Mann v. Commonwealth, 215 Ky. 731, 286 S. W. 1044, 1045); that "it is too bad to be run over and then shot and killed" (Wilson v. Commonwealth, 140 Ky. 1, 130 S. W. 794, 795); that the accused was crazy (Smith v. Commonwealth, 17, S. W. 868, 13 Ky. Law Rep. 612; Johnson v. Commonwealth, 107 S. W. 768, 32 Ky. Law Rep. 1117).

There is another line of cases in which statements of the character under consideration were admitted or rejected on grounds not affected particularly by the subject-matter. Thus in Beaty v. Commonwealth, 140 Ky. 230, 130 S. W. 1107, 1110, it was held error to have excluded the statement of the deceased, "I think it was no accident," because it tended to lessen or destroy the force and effect of his previous statement that his father had deliberately shot him, which had been admitted. See, also, Smith v. Commonwealth, 17 S. W. 868, 13 Ky. Law Rep. 612; Starr v. Commonwealth, 97 Ky. 193, 30 S. W. 397, 16 Ky. Law Rep. 843; Howard v. Commonwealth, supra. See, also, Crawford v. Com., 235 Ky. 368, 31 S. W. (2d) —.

A statement such as that the accused "shot me" is generally accepted as one of fact; but where the declarant was clearly not in position to know such to be a fact, as for example, where he was shot from ambush, the statement is rejected as being manifestly only his conclusion or opinion. Green v. Commonwealth, 18 S. W. 515, 13 Ky. Law Rep. 897; Stevens v. Commonwealth, 221 Ky. 222, 298 S. W. 678. But in Luker v. Commonwealth, 5 S. W. 354, 355, 9 Ky. Law Rep. 385, where a shooting occurred in the night and the deceased declared that defendant did it, it was held that the declaration could not be excluded as mere matter of opinion, although other evidence showed that the accused was, at the time of the shooting, marching immediately in the rear of the deceased, for which reason it was claimed the deceased could not know as a fact that accused fired the shot. The court said:

"To give weight to this argument we have not only to assume that though but a few feet from the

accused the deceased did not use his sense of hearing to detect the sound of the pistol, nor at any time turn his head to see what was going on behind him, but torture the explicit and emphatic declaration that the accused shot him, into a mere expression of opinion by the deceased."

In Henderson v. Commonwealth, 72 S. W. 781, 24 Ky. Law Rep. 1985, the same conclusion was reached where the deceased could not say definitely which of two men shot him.

These cases recognize that a controlling factor is whether the circumstances were such that the declarant could know whereof he spoke and intended the statement to be of a collective fact, although, critically speaking, it would be considered an expression of opinion. It seems to be the majority rule that the determination of the question of whether the statement is one of fact or opinion is to be based on a consideration of its terms when viewed in the light of the surrounding circumstances. The minority rule is to judge it alone by the face of the statement. 25 A. L. R. 1370.

Another influential factor in admitting these debatable statements is that, if doubt arises as to its nature, it should be resolved in favor of the accused, for, as said in the Mann case, "the rule excluding opinions or conclusions is not so strictly enforced where the declaration is favorable to the defendant." Henderson v. Commonwealth, supra; Stevens v. Commonwealth, supra; 30 C. J. 275.

From the foregoing, we conclude that, with respect to the subject-matter of a statement admissible as res gestae or as a dying declaration, there is no distinction; and deduce the rule of admission of these border line statements to be that, if the declaration in everyday language is commonly understood as a statement of fact, the declarant was in position to know whereof he spoke and intended it to be so; and, if it is favorable to the defendant, the declaration should be admitted. Its value of course is for the jury to weigh.

Making application to the first and last declarations before us, the court is of the opinion that they were admissible, and that the trial court erred in excluding them.

The judgment is accordingly reversed.