## Mayhew v. Commonwealth.

September 24, 1946.

784

J. Matt Dixon and Vernon Faulkner for appellant.

Eldon S. Dummit, Attorney General, Commonwealth of Kentucky, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

Willie Mayhew was convicted of the willful murder of Fred Richardson, and his punishment fixed at life imprisonment.

The shooting occurred about 9 p. m. on Saturday, June 9, 1945, near Leatherwood Creek in Perry County, and Richardson died in the Hazard Hospital about 9:30 the following day.

In the afternoon of the day of the shooting the deceased, Richardson, came to the home of Delmer Cornett, a young man of about seventeen years of age, and asked Cornett to accompany him to the mouth of Leatherwood Creek to get an inner tube for Richardson's car. On the way there they were joined by Louis Morgan and Billy Turner, and, according to Cornett, a pint of whisky was purchased by Morgan. It had been raining that day and Leatherwood Creek was at flood stage. In attempting to ford the creek the Richardson car drowned out and stalled and at Richardson's request Cornett went to get a tractor to pull the car from the creek. While Cornett was gone Frank Sparkman, who is a brother-in-law of the appellant Mayhew, stalled his automobile while attempting to cross the same creek. Sparkman had been joined by Mayhew a short time before reaching the creek and Mayhew was with him at the time the Sparkman car stalled.

When Cornett came back with the tractor he pulled the Sparkman car out of the creek, then attached the cable to the Richardson car for the purpose of pulling that car out. Mayhew testifies that as a matter of ac-

commodation he assisted in tying the cable to the Richardson car. All other witnesses agree that Mayhew rendered no assistance to Richardson in this connection.

While the Richardson car was still in the creek it seems that some of those present, including Sparkman, tried to get on the tractor and Richardson ordered them off. Mayhew remained on the tractor although it only had one seat in which Cornett, the driver, was sitting. Richardson told Cornett to stop at a store, which is about 100 yards from the creek, so that he could change the oil in his car. After the car was pulled from the creek Richardson, who was in his own car, blew his horn and again directed Cornett to stop. When Richardson ordered Cornett to stop, Mayhew who, as stated, was on the tractor, told Cornett not to stop, and drew his pistol. According to Cornett he was afraid to stop because Mayhew was threatening him, and Cornett says that he said to Mayhew: "Don't do that." Thereupon, Mayhew threw his gun in Cornett's face and told him to behave himself. Cornett says that he kept going until Mayhew said to him: "Stop, stop, I will kill that son-of-a-bitch" (meaning Richardson). After the tractor and car stopped Richardson got out of his car and went toward the tractor, and when about three feet away Mayhew shot him.

Mayhew says that when the tractor and car stopped in front of the store Richardson put his head out of the car door and said to him: "Get off there, God-damn you", and that he saw something "glistening" in Richardson's left hand; that when Richardson was three or four feet from him Richardson said to him: "You God-damn son-of-a-bitch, I am going to kill you." He says that he knew Richardson only casually and had had no trouble with him previously; that he had had no desire to kill Richardson but shot him because he thought Richardson was going to hit him.

No weapon was found in Richardson's possession.

After the shooting Richardson was removed to a neighboring house and from there to the Hazard hospital.

Only two grounds are urged for reversal of the judgment. First, it is claimed that the verdict is against the weight of the evidence and the result of passion and

prejudice; and, second, that the dying declaration of the deceased was improperly admitted.

It is entirely clear that there is no merit in the first contention. According to the testimony for the Commonwealth Richardson had done nothing to Mayhew, was not threatening him nor advancing on him in any way. It is established that Richardson was not armed. The only testimony supporting Mayhew's version of the affair is that of his brother-in-law, Sparkman, but Sparkman admits that Richardson had no weapon.

It seems to us that the claim of self-defense is rather flimsy. At any rate, there is ample evidence to support the verdict of the jury, and we have concluded that there is no merit in the appellant's first ground.

Appellant's argument that the dying declaration of the deceased was inadmissible seems to be based on two grounds:

1. That since the shooting is admitted by the appellant, the admission of the declaration added nothing to the case and was highly prejudicial; and 2. That the actual statement made by the deceased is nothing more than the expression of an opinion instead of a fact and therefore inadmissible. See Collins v. Commonwealth, 12 Bush 271, 75 Ky. 271; Luby v. Commonwealth, 12 Bush 1, 75 Ky. 1; Commonwealth v. Griffith, 149 Ky. 405, 149 S. W. 825; Philpot v. Commonwealth, 205 Ky. 636, 266 S. W. 348; Justice v. Commonwealth, 269 Ky. 846, 108 S. W. 2d 1011, and Allen v. Commonwealth, 168 Ky. 325, 182 S. W. 176.

The declaration in question was made to Frank Grider who had known Richardson about one year. Grider was at the hospital on Sunday for the purpose of visiting his wife who had given birth to twins. About fifteen or twenty minutes before Richardson died Grider entered Richardson's room and, according to him, the following conversation took place: "I just said, 'Hello Fred' and he said 'Hello Frank', and I said, 'How do you feel', and he said he was going to die." Objection was then made by appellant, and the court, as is proper, called the witness away from the jury and in chambers examined him to determine whether the declaration was competent. The court determined that it was competent and Grider was permitted to testify before the jury that

after Richardson said that he was going to die, he stated: "I walked around the car and he shot me." Grider also says that Richardson asked him to find his pocketbook and told him that he had $19 and two checks in it. Present in the room with Grider and Richardson at the time these statements were made were Mrs. Burt Kelly and Mrs. R. L. Marks, both nurses employed at the hospital. Mrs. Kelly states that she heard Richardson make the statement that "He walked out of the car and that he didn't know why the man shot him." She also said that she heard him say something about $19 but not knowing where it was.

Mrs. Marks testified that she heard Richardson make the statement about his condition, which was about fifteen minutes before he died, and that Richardson "Just said the man shot him but he didn't know why he shot him."

The statement of Richardson that "He shot me" is clearly a statement of fact and not a conclusion. It has been said that the test of a dying declaration is that the matters would be competent only if they would be coming from a living witness. Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. 2d 29, and cases cited therein. Since Richardson was only about three feet from Mayhew at the time he was shot, and Mayhew was clearly visible to him because of the headlights on the car, he was undoubtedly in a position to know that Mayhew did shoot him, and Richardson, of course, could have testified to this fact had he been living at the time of the trial. Under this test this part of the statement is competent.

The main objection to the declaration that the remainder of the statement: "I don't know why he shot me", was a mere conclusion and the same as if deceased had stated: "He shot me for nothing", is without merit. It seems to us that the declaration is more like the statement that the deceased was doing nothing at the time he was shot. Such a statement in a dying declaration has often been held to be competent. Pennington v. Commonwealth, Ky., 68 S. W. 451; Hunter v. Commonwealth, 221 Ky. 170, 298 S. W. 379; Triplett v. Commonwealth, 245 Ky. 149, 53 S. W. 2d 348; Woods v. Commonwealth, 282 Ky. 596, 139 S. W. 2d 439.

According to the two nurses the deceased said that he did not know why the man shot him. This court has passed on the admissibility of such a declaration in the case of Mays v. Commonwealth, 200 Ky. 678, 255 S. W. 257, wherein it was held that such a statement is competent as a dying declaration.

There being no prejudicial errors in the record the judgment should be and is affirmed.