## MARCUM v. COMMONWEALTH.

Court of Appeals of Kentucky.
March 13, 1953.

J. S. Sandusky, Somerset, Hile Pritchard,. Albany, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A.. Stewart, Asst. Atty. Gen., for appellee.

WADDILL, Commissioner.

Upon an indictment charging him with the murder of John McKinley, the appellant, Tommie Marcum, was convicted of voluntary manslaughter and sentenced to 12 years in the penitentiary. Appellant urges the following grounds for reversal : (1) The verdict is flagrantly against the evidence; (2) separation of the jury; (3) violation of Section 246 of our Criminal Code of Practice; and (4) error in admitting the dying declaration of the deceased.

The Commonwealth produced no eyewitness to the shooting, but did establish by three witnesses that McKinley made a dying declaration that Tommie Marcum shot him without cause. It was further established by appellant's daughter, Edith, that after McKinley had been shot, appellant came to his home and gave Edith a pistol and told her "to put it up." The next morning she delivered the pistol to the sheriff. The two bullets which were identified as having caused McKinley's death were proven by scientific tests to have been fired from the gun that Edith had surrendered to the sheriff. Other evidence was produced which tended to establish appellant's guilt. No weapon of any kind was found on McKinley and none was discovered at the place where the shooting occurred.

Appellant pleaded self-defense. He testified that about dark on the evening of January 10, 1952, he was driving his car on Highway No: 90 near Nora, Kentucky, when he was flagged to a stop by John McKinley who was then walking alone along the highway. Appellant stated that Mc-

Kinley came over to his car and said to him: "I have heard you have been accusing me of stealing some fence;" and that he replied, "Damn you, you did steal it;" that McKinley ran his hand in his pocket and grabbed his gun. Appellant said that he fired twice at McKinley and drove off. But in response to further questioning as to why he shot McKinley, appellant answered, "they killed my boy and cut the side of my head off." Apparently appellant was alluding to some previous difficulty he and his son had with John McKinley's brother.

On cross-examination appellant admitted that he had denied shooting McKinley when questioned by the law enforcement officials on several occasions and that the first time he had confessed the shooting and claimed self-defense was when he testified after the court had overruled his motion for a peremptory instruction of acquittal.

Under the evidence, the question of appellant's guilt was a matter for the jury to determine. We shall repeat what we recently said in Kinmon v. Commonwealth, Ky., 255 S.W.2d 987, which we believe is applicable to the present case. The jury saw and heard the witnesses. They were the judges of the weight and credibility of the testimony. The evidence sustains the conviction.

The alleged separation of the jury occurred when the jury was permitted to go to the rest room under guard. It is asserted that ten of the jurors had returned and taken their places in the jury box when it was discovered that all of the jurors were not present; however, the two absent members soon appeared. The affidavit of the jury's bailiff states that there was no actual separation of the jury and it sufficiently explains the momentary delay of the two jurors in returning to the jury box. There is no showing, or claim, of any misconduct on the part of any member of the jury.

We have exhaustively treated the subject of what constitutes a separation of the jury under Section 244 of our Criminal Code of Practice in several recent opinions. Howard v. Commonwealth, Ky., 255

S.W.2d 629; Minix v. Commonwealth, Ky., 249 S.W.2d 48; Horton v. Commonwealth, Ky., 240 S.W.2d 612. We shall not pursue a further discussion of this subject in the instant case as we are of the opinion that appellant's argument on this ground is highly technical and without merit. See Sections 271, 340, Criminal Code of Practice.

After the case was submitted to the jury and while the jury were being served with their evening meal in a restaurant, one of the jurors approached Mr. Lemon, an attorney who had assisted in the prosecution of the case and who was seated in the restaurant near the juror, and asked him "if all jurors had to agree before making a verdict." Mr. Lemon told the juror all questions concerning the case should be addressed to the court. When the court convened, Mr. Lemon informed the court and opposing counsel of the occurrence. Apparently, the attorneys and the court considered the incident to be of little importance as no motion was made to discharge the jury. However, the appellant included it as a ground for new trial and now insists it was prejudicial as such conduct violated Section 246 of our Criminal Code of Practice.

We think appellant waived his right to take advantage of this error by his failure to seasonably move for a discharge of the jury. Under the circumstances his silence and failure to interpose objections must now be construed as an implied consent to take his chances with the jury as constituted. Mullins v. Commonwealth, 258 Ky. 529, 80 S.W.2d 606; Wilson v. Commonwealth, 243 Ky. 333, 48 S.W.2d 3; Vinegar v. Commonwealth, 104 Ky. 106, 46 S.W. 510.

Appellant next complains that the court, over his objections, permitted the introduction of the deceased's dying declaration as related by the witness Hershel McKinley, which was: "Hershel, Tommie Marcum drove down the road behind me and shot me. I don't see why he did. I can't understand, Hershel, Tommie Marcum shooting me." Appellant asserts that the statement "I don't see why he did. I

can't understand, Hershel, Tommie Marcum shooting me" were mere conclusions and incompetent.

The part of the dying declaration complained of was not a conclusion of McKinley, nor an expression of his opinion, but was merely a statement of McKinley that he was unable to say why he was shot. In the case of Mayhew v. Commonwealth, 302 Ky. 783, 196 S.W.2d 612, 614, the court in considering the identical question now presented said:

"The statement of Richardson that 'He shot me' is clearly a statement of fact and not a conclusion. It has been said that the test of a dying declaration is that the matters would be competent only if they would be coming from a living witness. Stewart v. Commonwealth, 235 Ky. 670, 32 S.W.2d 29, and cases cited therein. Since Richardson was only about three feet from Mayhew at the time he was shot, and Mayhew was clearly visible to him because of the headlights on the car, he was undoubtedly in a position to know that Mayhew did shoot him, and Richardson, of course, could have testified to this fact had he been living at the time of the trial. Under this test this part of the statement is competent.

"The main objection to the declaration that the remainder of the statement: 'I don't know why he shot me', was a mere conclusion and the same as if deceased had stated: 'He shot me for nothing', is without merit. It seems to us that the declaration is more like the statement that the deceased was doing nothing at the time he was shot. Such a statement in a dying declaration has often been held to be competent. Pennington v. Commonwealth, Ky., 68 S.W. 451; Hunter v. Commonwealth, 221 Ky. 170, 298 S.W. 379; Triplett v. Commonwealth, 245 Ky. 149, 53 S.W.2d 348; Woods v. Commonwealth, 282 Ky. 596, 139 S.W.2d 439.

"According to the two nurses the deceased said that he did not know why the man shot him. This court has passed on the admissibility of such a declaration in the case of Mays v. Commonwealth, 200 Ky. 678, 255 S.W. 257, wherein it was held that such a statement is competent as a dying declaration."

In Mays v. Commonwealth, 200 Ky. 678, 255 S.W. 257, 258, this was said:

"It is urged in support of this complaint that it was error to admit the statement of the deceased that he and Mays had no trouble, and also the one that he did not see why defendant shot him, since, as is insisted, the first one related to time prior to the difficulty, and the second one expressed but the conclusion of the declarant. To say the least of it, it requires somewhat of a strained construction to attribute to them the interpreted meaning adopted by counsel for defendant, and we do not think they may be so applied. The first declaration as to the trouble between the parties might be construed as referring to the occasion of the homicide with as much propriety as to past occasions, and the statement that 'I don't see why he shot me' is not equivalent to the expression, often condemned by this court, 'He shot me for nothing,' or its substance. But, whether so or not, the statement complained of was immediately followed by one covering the history of the whole transaction from the commencement to the closing, and under those circumstances the error, if any, in admitting the prefacing statement complained of could not be regarded as prejudicing the substantial rights of defendant."

Judgment affirmed.

DUNCAN, J., not sitting.