**Virgil COUCH, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 13, 1959.

**40**

Isaac Turner, Hyden, for appellant.

Jo M. Ferguson, Atty. Gen., David Sebree, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

A group of young men and women were having a moonshine drinking party at the mouth of the Old House Hollow Branch on the afternoon of July 28, 1957. Jim Nantz, who lived up the hollow, heard about the party and joined it. He brought along his 22 rifle and a bottle of liquor as his contribution to the gaiety. There is some evidence that he had several hundred dollars on his person. Virgil Couch had assaulted Joe Ward with his fist. Jim Nantz interceded and Couch, with an oath, turned and grabbed the rifle away from Nantz, who was holding it on his lap, and clubbed him over the head with the butt of the rifle. The party then broke up quickly and left Nantz unconscious. He was discovered there not long afterward, taken to a hospital in Knoxville and died three days later from the effects of the clubbing.

Upon his trial for murder, the defendant related there had been some argument between him and the deceased over the arrest of Nantz' son on a whiskey charge. Nantz accused him, the defendant, of having caused the arrest. During the afternoon, he testified, Nantz had "roused" him with the rifle and he had taken the rifle and was in the act of unloading it when he was warned that Nantz was coming on him with a knife. He then struck him in self-defense. The evidence was contradictory as to whether Nantz had a knife.

Couch was convicted of voluntary manslaughter and sentenced to ten years' imprisonment.

The evidence clearly supports the verdict. It is the weight of the evidence that determines the question of guilt or innocence of the defendant and not the fact that a greater number of witnesses testified for the defendant than for the Commonwealth, as the appellant seems to contend.

While it is submitted that the court erred in refusing to admit competent evidence of-

fered by the defendant, none is pointed out, and we observe none.

■ It is argued that a statement of the deceased which was admitted as a dying declaration was inadmissible. The decedent's daughter testified that a few hours before her father died, he told her he "wasn't going to be here long" and asked her several times to call his son Edgar. His son Robert was with him at the hospital. He refused to tell Robert on the day he was injured who had beaten him up because Robert told him he would kill those who had done it. But a few hours before he died he told Robert, "I'm not going to be here long." After Robert had promised he would not do anything about it, the father said, as Robert testified, "Virgil Couch and Otis Howard beat him up and took his money for narry thing; said he never bothered nobody." Robert's sister corroborated his testimony.

■ We think the circumstances show that the deceased had a fixed belief that death was impending and certain to follow soon. Such a situation is so solemn that the law considers it as creating an obligation equal to that which is imposed by a positive oath administered in a court of justice. The competency of statements made at that time by an injured person concerning the facts and circumstances under which the fatal injury was inflicted has been long recognized. Ordinarily, this excludes matters of belief or opinion or conclusion. But often there is difficulty in classifying a statement as one of fact or of opinion. In Stewart v. Commonwealth, 235 Ky. 670, 32 S.W.2d 29, 31, we fully discussed this aspect of admissibility and quoted extensively the philosophical views of Wigmore and Chamberlayne on Evidence. We held that a statement of the deceased, "It was an accident," was to be regarded as stating in every day language what is commonly understood to be a statement of fact; hence, was admissible. In that opinion we pointed out that our cases hold that a statement, "He shot me for nothing," is an expression of opinion, whereas a statement relating to the declarant's own acts, as that he was doing nothing, is admissible. A late case is Mayhew v. Commonwealth, 302 Ky. 783, 196 S. W.2d 612.

The statement of the deceased that Couch and Howard beat him up and took his money was clearly admissible as a statement of fact. The parts of the statement that they had taken his money "for narry thing" and that he, the declarant, "never bothered nobody," although they import conclusions, were simple, colloquial expressions commonly understood as statements of fact, hence, were likewise admissible. Moreover, the statement that he, the declarant, "never bothered nobody" related to his own conduct on the occasion on which he was fatally injured.

■ A new trial was asked on the ground of newly discovered evidence. The affidavits of newly found witnesses are to the effect that when Nantz received the fatal clubbing, the defendant was dead drunk, "sitting on a rock" and "unable to stand on his feet," but "he got up and told the boy not to hurt Nantz"—referring to another member of the party. On the trial, as stated above, the defendant testified that he had struck Nantz in self-defense; and the record contains several statements of other persons that he had done so. Other than the self-evident fact that the witnesses cannot be regarded as newly discovered, for they were members of the party, the character of the proffered evidence is so untrustworthy as to justify the rejection of the ground as sufficient for granting a new trial.

The judgment is affirmed.