## Music v. Commonwealth.

(Decided November 14, 1919.)

### Appeal from Boyd Circuit Court.

1. Criminal Law—Trial—Separation of Witnesses—Discretion.—The requirements of section 601 of the Civil Code for the separation by the court of witnesses, upon the request of a party litigant, is not mandatory or imperative upon the court, but are intended only to vest him with power to separate the witnesses upon request, if in his judgment justice and the orderly and proper conduct of the trial require it, and unless it appears from the record that the court abused its discretion to the prejudice of the substantial rights of the parties requesting the separation, the judgment will not be reversed for this error.

2. Criminal Law—Evidence of Commission of Other Crimes.—Proof of the commission of other crimes by the defendant is generally inadmissible, but such proof may be admitted if the commission of such other crimes is recent, for the purpose of establishing the identity of the accused, or to show his guilty knowledge, or a particular criminal intent on his part, or malice or motive for the commission of the offense for which he is on trial, or that the other crime was a part of a plan or system of criminal actions. But the court should admonish the jury of the purpose for which such testimony is admitted.

3. Criminal Law—Arrest—How Made.—An officer may attempt to arrest one when he has reasonable grounds to believe that such person has committed a felony, and in making the arrest it is his duty to inform the alleged offender of his purpose, and perhaps of the crime with which he is charged, but these duties will not be required of the officer if he is prevented from doing so by the unlawful acts and conduct of the one attempted to be arrested or if such person knows him to be an officer and knows the offense for which the arrest is attempted to be made. Instructions

in this case examined and found correct in submitting to the jury the rights and duties of the defendant at the time the deceased attempted to arrest him.

4. Criminal Law—Argument of Counsel.—While it is the duty of an attorney in his argument to the jury to confine himself to the law as laid down by the court and the testimony as given by the witnesses, yet he is allowed a reasonable latitude in drawing conclusions and deductions from facts and circumstances appearing in the case, and unless he in his argument radically departs from this rule and injects into the case poisonous, irrelevant and prejudicial matter, for which nothing in the record furnishes justification, the judgment will not be reversed for this reason alone.

5. Criminal Law—Witness Not Accomplice Because Jointly Indicted. —A witness is not necessarily an accomplice because he is jointly indicted with the defendant on trial, and if the testimony conclusively shows him not to be an accomplice, the court is not required to instruct the jury as provided in section 241 of the Criminal Code; nor is such an instruction necessarily required even though the witness be an accomplice, if his testimony is substantially the same as that of the defendant.

W. D. O'NEAL for appellant.

CHARLES H. MORRIS, Attorney General, and BEVERLY M. VINCENT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

From a judgment of the Boyd circuit court convicting him of the crime of murder, and fixing his punishment at death, the appellant, Charles Music, prosecutes this appeal. Defendant's victim was Charles W. Hatfield, and the killing occurred about twelve-thirty on the night of March 30, 1919. The deceased was a policeman of the city of Ashland, and met his death under the following circumstances, which are established by the undisputed testimony found in the record.

Sometime near twelve o'clock on the night in question, the appellant and his codefendant in the indictment, Edward Bradley, forcibly robbed Charles Hill, the owner and proprietor of the Bragg hotel, located in Ashland. The robbery was accomplished by the two defendants in the indictment suddenly appearing in the office of the hotel, in which the manager was the only person at that hour, and putting him in fear with drawn revolvers took his watch and some money from his person, some money from the cash drawer behind the desk, and they then tore down the telephone, backed out of the office

with revolvers drawn on the manager. They then disappeared up the street. The victim of the robbery immediately notified the police department and they at once instituted a search for the robbers. The deceased, Hatfield, about thirty minutes thereafter discovered them near the corner of Fifteenth street and Greenup avenue, and while he was trying to arrest them the defendant and appellant shot him with a 45 automatic Colt's pistol, from which shot he died soon thereafter. His death was not instantaneous, however, for after being shot he fired at the defendant (or both of them) some five or six times, his pistol being one of much smaller caliber than that used by the defendant. All of the witnesses, without contradiction, testified that the first shot was much louder than those following it, and that there was a slight intermission of perhaps a second or so between the first one and those fired by the policeman. Immediately after the shooting, which attracted the attention of the other searching policemen, the defendants in the indictment were pursued through alleys and streets of the city, in which pursuit the defendant Bradley was captured, but the appellant succeeded in making his escape and was captured two days thereafter in Lawrence county. After shooting Hatfield, and while fleeing from the officers, the defendant threw away his pistol and his overcoat, both of which were afterward found and identified as being his property, or at any rate as being the overcoat and pistol which he had in his possession on the afternoon preceding the killing when a number of witnesses saw him in different parts of the city wearing the overcoat, and to some of them he exhibited and tried to sell the pistol. He had a German pistol at that time which he also tried to sell. To one witness he tried to pawn both pistols for $7.00, but requested a loan of another one which was in working order until the two pawned by him could be redeemed. The overcoat was further identified by several witnesses who saw defendant wearing it on the fatal night, both before and after the killing. The deceased, at the time he was killed, was wearing his uniform, and according to the preponderance of the testimony, he was also wearing a light overcoat, on the outside of which was his policeman's badge. All the witnesses testified that he also wore his policeman's cap.

It was proven by the Commonwealth that the two pistols in the possession of the defendant on the afternoon preceding the killing were stolen from the window of a store in Huntington, West Virginia, on the night of March 29. The witness so testifying not only identified the pistols by their appearance, but he had them on exhibition in the store window and had taken their numbers. It was also proven by the Commonwealth that the offense of robbing a store house is a felony under the laws of the state of West Virginia.

Robert Dawson, introduced by the Commonwealth, was yard conductor of the Chesapeake & Ohio Railway Company, and had charge of a switch train which was doing some switching on the night of the tragedy. The witness was standing on Front street about two hundred and ninety feet from the scene of the killing and saw what occurred. He testified that he saw two men somewhat in the shadow of a telegraph pole, one of whom had on an overcoat; that the latter ran toward the middle of the street and fired the fatal shot at Hatfield, who immediately started to fall; that as he fell he drew his pistol and commenced firing; that Bradley, who was not wearing an overcoat, did not appear to have anything to do with the shooting, but got behind a box by the side of a telephone pole just after defendant fired the fatal shot and about the time Hatfield commenced shooting; that immediately after defendant fired the shot, he ran, as did also Bradley, about the time Hatfield ceased shooting. The engineer of the switching train corroborated the conductor in some particulars.

Appellant's codefendant, Bradley, was introduced by the Commonwealth, and in stating what occurred at the time of the killing, he said:

"Well, me and this man, Music, we was coming out of the alley turning into 15th street, and within a couple of feet from the corner of 15th and Greenup this policeman came along, he said 'stop there a minute,' and Music, says, 'stop hell,' and turned around and fired this shot. I seen the officer in back of us and then the officer commenced shooting and I got behind a post until he shot out, and that is all I know about it."

He further testified that he had nothing to do with the killing and did not know that appellant was

going to shoot, nor had there been any agreement or conspiracy between him and appellant to kill deceased, or any one else; nor had there been an agreement to resist arrest. He said he did not see the policeman until after the defendant had fired at him, when witness turned and saw deceased and recognized him as a policeman, or supposed him to be a policeman from his cap. He corroborates the conductor and engineer as to his hiding behind the box and running away about the time the shooting ceased.

The defendant introduced no witnesses but himself. He acknowledged having the pistols at all the times testified to by the Commonwealth's witnesses; that he and Bradley had committed the robbery at the hotel, and that he shot the deceased. In relating what transpired at the time, he said:

"Well, sir, me and Bradley was coming up this street, and there was some one came right out behind us, out of the alley, and says 'wait there,' and I looked around and seen him just start up with a gun and I pulled my gun and shot. I done it to save my life."

He said that he did not know that the deceased was a policeman but he did not deny seeing his uniform, badge or cap. Other minor facts and circumstances appear in the record, bearing more or less upon the guilt of the accused, but the above constitutes substantially the testimony in the case.

It is urged for a reversal that the court erred (1) in refusing to separate the witnesses, upon motion of the defendant. (2) In permitting the introduction of incompetent testimony by the Commonwealth. (3) In refusing to admit testimony offered by defendant. (4) In instructing the jury. (5) In failing to instruct the jury concerning the evidence of Bradley, who, it is claimed, was an accomplice, as required by section 241 of the Criminal Code, and (6) Prejudicial argument made by attorney for the Commonwealth in addressing the jury.

Briefly considering these in the order named: (1) Section 601 of the Civil Code, which applies in the trial of criminal causes, provides that the presiding judge may exclude from the court room witnesses of the adverse party not under examination, if either party requires it, and it is insisted that it was prejudicial error

for the court to overrule the motion made by defendant for that purpose.    The application of the section has often been before this court, and it has uniformly been held that its only purpose was to vest a discretionary power in the trial court to exclude and separate the witnesses, but it has never been held that the failure to do so was prejudicial error authorizing a reversal of the judgment, unless the particular facts and circumstances of the case made it so.   The section has never been construed as mandatory or as imposing an imperative rule.  It simply gives the party the right to ask for the separation, and the authority in the court to grant it, subject always, however, to the exercise of a sound discretion.

In the case of Jackson v. Clem, 82 Ky. 84, the court, in considering the section of the Code, *supra,* recognized the necessity of construing it in a way most conducive to a just and proper practice by leaving the question to be determined by the presiding judge in the exercise of a sound discretion, the court then said:

"This, it seems to us, is the meaning of the provision of the Code on this subject, and when it provides that, when either party requires it, the judge may exclude from the court room any witness, it is a matter addressed to his discretion.

"The word *require* means simply the right of the party to make the motion to ask for the exclusion of the witness, and is not a demand that the court is compelled to comply with."

The case of Salisbury v. Commonwealth, 79 Ky. 425, relied on by defendant, does not announce a different rule. It does not appear that the judgment was reversed for the alleged error of failing to separate the witnesses, but whether so or not it was held that the witness sought to be excluded was the prosecutor of the defendant, as well as a witness, and because he was a prosecutor the rule should especially apply to him.

But the rule as announced in that case has long since been departed from, and it is now held that the prosecuting witness may remain in the court room if it is necessary for the proper conduct of the trial, even though a motion may have been made for the exclusion of all the witnesses. There is nothing in this case to show that defendant's rights were prejudiced in the

least because the witnesses were allowed to remain in the court room. Nearly all of them testified to different facts and circumstances looking to the guilt of the defendant, and there was not and could not be any occasion for any collusion or conspiracy among them to fortify each other or to give false testimony, and even if the matter complained of should be regarded as a technical error, we would not be authorized to reverse the judgment therefor unless it was prejudicial to the substantial rights of the defendant. For other cases dealing with this question, see Druin v. Commonwealth, 124 Southwestern (Ky.) 856; Greer v. Commonwealth, 27 Ky. Law Reporter 333, and Baker v. Commonwealth, 106 Ky. 212.

The incompetent testimony alleged in appellant's (2) contention consists mainly in that relating to the robbery at the hotel and of the store in Huntington, West Virginia. This testimony no doubt was admitted chiefly for the purpose of showing that defendant not only had committed recent felonies which would authorize the policeman to arrest him, but it also tended to show the motive of defendant in taking the life of deceased which was to avoid arrest for those felonies. The general rule existing, without exception in criminal practice, is that evidence of other crimes is competent to show identity, guilty knowledge, intent or motive, and the evidence may also be admitted where the offense charged is so interwoven with other offenses that they cannot be separated. The more recent cases from this court so holding are Clary v. Commonwealth, 163 Ky. 48; Romes v. Commonwealth, 164 Ky. 334; Richardson v. Commonwealth, 166 Ky. 570; Commonwealth v. McGarvey, 158 Ky. 570; Thomas v. Commonwealth, 185 Ky. 226, and Hickey v. Commonwealth, idem, 570. A substantial statement of the rule is thus made in the Clary case referred to:

"When one is being tried for a crime the relevancy of the proof of other crimes of which he has been guilty is only in case where a crime has been proven and the proof of some other crime is necessary to identify the accused as the person who committed the crime proven, as above stated; or where it is necessary to show guilty knowledge in the accused, it is relevant to prove that at another time and place, not too remote, the accused

committed or attempted to commit a similar crime to the one of which he is accused; or where it is necessary to show a particular criminal intent in the person on trial, or to show malice in him, or the motive for the commission of the crime, or to show that the crime of which he is being tried is a part of a plan or system of criminal actions, it is relevant to prove against the accused, under proper instructions of the court to the jury, other crimes of which the accused has been guilty."

The court in the instant case admonished the jury as to the purpose for which it might consider this complained of testimony, and we are confident that it was not error to admit it when accompanied with the admonition.

The (3) error complained of is so wholly immaterial as to scarcely require our consideration. The defendant's attorney asked him while on the stand where he was reared and whether his parents were living or dead. For some reason the Commonwealth objected to this testimony, which objection was sustained. There was no avowal as to what the witness would say had he been permitted to answer the questions, and for this reason alone the error, if material, could not be considered by us. Under no aspect of the case could it be said that the refusal of the court to allow the questions to be answered was prejudicial to defendant's rights. For aught that appears it may have been prejudicial to permit answers to be made.

The (4) ground, complaining of the instructions given to the jury, is based upon the contention that they deprive the defendant of the right of the exercise of self-defense, whether he knew the deceased was an officer and attempting to arrest him or not, but we do not so construe the instruction. Those which it is claimed contain the vice complained of are numbers 2 and 3. They are too long to insert in this opinion. Suffice it to say that under instruction number 2 the jury were not authorized to convict the defendant unless they found from the evidence that "at the time of such shooting he knew or had notice that said Charles W. Hatfield was a police officer," and number 5 did not deprive defendant of his ordinary right of self-defense unless he "had notice that said Hatfield was a police officer."

The court did not submit in any of the instructions the duty of Hatfield to inform the defendant of the fact that he was about to be arrested, or the nature of the offense with which he was charged, for the two manifest reasons (a) that according to all the testimony the policeman did not have time nor opportunity to so inform the defendant (Hickey v. Commonwealth, *supra,* and cases therein referred to), and (b) that defendant knew that he had just committed a felony and was at that time fleeing from apprehension. Besides, the testimony of Bradley, who is the only witness who told what the deceased and the defendant said at the time, contain facts, which are not denied, and which show that defendant knew the purpose which the officer had in view when he said ''Stop there a minute,'' after which defendant said ''Stop, hell,'' and immediately fired. No reasonable person can read this record without being convinced beyond doubt that the policeman was killed to prevent the arrest, and at a time when defendant knew that he was a policeman and intended to arrest him. While the instructions are not connectedly drawn, we think they submit in substantial form the law governing the right of the defendant under the facts and circumstances of the case.

In considering the (5) error relied on, it may be briefly disposed of upon the ground that the witness Bradley is not shown by the testimony of any one to be an accomplice in the crime for which the defendant was tried. The fact that he was indicted jointly with the defendant does not make him an accomplice if the testimony in the case shows that he was not one. Thus in Gregory's Kentucky Criminal Law, page 824, it is said: ''The mere fact that one person is indicted for, or charged with, a crime in connection with another, does not make him an accomplice, and whether or not he is an accomplice is a fact to be determined like any other fact, from the evidence.'' The text is supported by the cases from this court of Sizemore v. Commonwealth, 10 Ky. Law Rep. 1; Smith v. Commonwealth, 148 Ky. 69; Deaton v. Commonwealth, 157 Ky. 325, and Nicoll v. Commonwealth, 169 Ky. 491.

In the Deaton case, upon this point, it is said:

''It is erroneously assumed by appellants that they (Commonwealth's witnesses) were accomplices. The fact that they were so indicted does not make them so.

Ochsner v. Commonwealth, 128 Ky. 761; Sizemore v. Commonwealth, 10 Ky. Law Reporter, 123; Nelms v. Commonwealth, 82 S. W. 260. That fact, like any other fact, is to be ascertained from the evidence.''

Furthermore, the rule is that where the accused testifies to substantially the same facts as does the alleged accomplice, he is not prejudiced if the court failed to give the instruction concerning the testimony of an accomplice. Frick v. Commonwealth, 29 Ky. Law Rep. 187. It is therefore apparent that this ground of complaint is without merit.

The alleged misconduct of the attorney making the closing argument to the jury, of which complaint is made in ground (6) consists in these remarks:

''They (the defendants) knew they were going to be arrested; policeman Hatfield said, 'Hold on there, boys, the Bragg hotel has been robbed, you fill the bill, wait until I investigate.' '' . . . ''We do not ask him if he stole those pistols in Huntington, we knew he did it.'' . . . ''He plead not guilty and compelled us to prove his guilt, and after we had proven he fired the shot that killed Charles Hatfield, his attorney took him into the room there (pointing to the jury room) and told him that it would not do for him to contradict all those witnesses, and that he had better admit the shooting, and say he did it in self-defense and did not know Hatfield was a policeman.''

The last remark complained of was withdrawn by the attorney when the objection to it was made. The defendant's attorney at once denied the fact contained in the statement, all of which occurred in the presence of the jury, and the court said: ''The jury will try the case on the law and the evidence, alone.'' The proper latitude to be allowed an attorney in his argument to the jury has frequently been before this court, and in each case it has been held that reasonable inferences to be drawn from the facts and circumstances might be made and commented upon, and that to do so was not prejudicial error. The law in such cases recognizes the frailty of human nature, and that in the heat of argument inappropriate remarks are liable to be made, but unless they are altogether unfounded from any fact or circumstance appearing in the case, and manifest such

a wide departure from legitimate deductions as to be at once poisonous and prejudicial, a reversal will not be ordered for that reason alone. But if the complained of remarks are entirely foreign to anything appearing in the case, and if they were made for the purpose of taking an undue advantage and such was their probable effect, it is the duty of the court to reverse the judgment rendered upon a verdict so obtained.

We do not find the remarks complained of in this case to belong to the latter class. While the attorney for Commonwealth in some of them assumed facts for which there was no express testimony, yet they were fairly deducible from the circumstances, and besides, the court directed the jury in substance not to be influenced by them, but to "try the case on the law and the evidence alone."

It might be safely said that no trial is faultlessly conducted, and if the proceedings of the courts in conducting tedious and expensive trials could be set aside for every technical error, however non-prejudicial, there would be no end to litigation, and the Commonwealth would be bankrupted in an effort to apprehend and convict offenders. Our conclusion is that the judgment should not be reversed for the alleged error now under consideration. The penalty in this case being the severest known to the law, we have given thorough consideration to each of the grounds urged for a reversal of the judgment, and are unable to say that any of them furnish just cause for setting it aside. The legislature in fixing the penalty of death as punishment for murder realized that there are occasions where the magnitude of the crime authorized its infliction. It is not for us to comment on the wisdom or lack of wisdom of this law, but to administer it when and where the facts and circumstances demand it.

Finding no error authorizing a reversal of the judgment, it is affirmed.