## Rush v. Commonwealth.

(Decided October 30, 1931.)

(As Extended on Denial of Rehearing December 18, 1931.)

C. R. LUKER for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

Opinion of the Court by Hobson, Commissioner— Affirming.

Felix Rush, Elmer Rush, Tommy Asher, and Jimmie Asher were indicted in the Laurel circuit court under section 1160, Kentucky Statutes, for the crime of feloniously assaulting J. C. Russell with the felonious intent to rob him of money and property of value. Felix Rush was placed on trial. He was found guilty, and his punishment fixed at five years' imprisonment. He appeals.

The demurrer to the indictment was properly overruled. The indictment charged in the first paragraph that the four defendants conspired to commit the offense and, pursuant to the conspiracy, committed it. In the second paragraph of the indictment it was charged that Felix Rush committed the offense, and that the other three were present and aided and assisted him. The indictment does not charge two offenses, but only charges that the offense was committed in different ways and in separate paragraphs. This has been often sustained. Thompson v. Com., 1 Metc. 13; Howard v. Com., 110 Ky. 356, 61 S. W. 756, 22 Ky. Law Rep. 1845.

Appellee relies on Chappell v. Com., 200 Ky. 429, 255 S. W. 90, but that case was overruled in Hannah v. Com., — Ky. —, — S. W. (2d) —.

It is earnestly insisted that the verdict is palpably against the evidence. Russell was running a store in London. His residence was near his store. He shut up his store not long before 8 o'clock on Saturday night, August 24, 1930, after counting his money and putting it in two bags, which he carried in his hand as he went to his house from the store. As he went upon the porch of

the house, a man jumped at him; struck him with a sand-bag, and, after a considerable struggle, got him down. Russell called to his son, who was not far off. The son ran up, and the assailant disappeared to get away from the son. Russell testified that his assailant was in his shirt sleeves and had on goggles. The goggles and the rubber tube filed with sand were found the next morning at the back of the premises where the assailant went out. Russell positively identified Felix Rush as his assailant, and there was proof tending to show that from the point where his assailant stood he could see Russell counting his money and putting it in the bag in the storeroom just before he went home. On the other hand, Felix Rush proved by his codefendants and a number of other witnesses that he was elsewhere at the time of the assault and had nothing to do with it. He proved a number of circumstances sustaining his defense, but, after all, it was simply a question of the credibility of the witnesses, and this was a question for the jury. The verdict is not palpably against the evidence. Picklesimer v. Com., 224 Ky. 381, 6 S. W. (2d) 457.

The court properly did not give any instruction on a simple assault. While Russell expressly says that nothing was said by his assailant, the circumtances all tend to show that the purpose was to get possession of the money he had. No other reason for the assault appears in the evidence. The cases in which such an instruction had been directed were all cases where there were facts showing that the assailant in truth was not trying to rob the person assaulted.

A number of rulings of the court, in the admission of evidence, are complained of, but none of them prejudicially affected the substantial rights of the defendant. In explaining why he had not locked up his store sooner, Russell stated he said to his son before counting the money that he would lock the door later. But this was only to illustrate his conduct, and in no wise affected the defendant. Russell on cross-examination admitted he did not tell the sheriff or any of the persons he saw that night who his assailant was. Felix Rush was arrested the next morning, and Russell was allowed to testify on reexamination that on Sunday he said that the man was in jail. This was only to show that Russell identified the man before he was brought out on the examining trial, and that he did not identify him until after he was arrested simply went to the credibility of the witness.

The fact was that Rush was twenty-two years old; he lived about twelve miles from London. Russell had lived out in that neighborhood eight years before, but there was no evidence that he knew anything of Felix Rush after he left the neighborhood.

The defendant also complains that important evidence he offered was excluded. He testified that it was a dark night, and, to sustain his position that Russell could not see the man that assaulted him sufficiently to identify him, he testified that he had examined the calendar and that the moon rose that night at a certain time. The court refused to allow this evidence. The calendar was the best evidence. He was permitted to state all the facts that he personally knew. Rush was arrested the next morning as he was entering a Ford car left that night on the side of the road back of Russell's house. The number of this car had been chiseled off with great care; the key was gone, and the connection between the keyboard and the running gear had been taken out, and the wires had been tied together with another wire. Rush testified that he did not know anything about this car, and simply went to it for an innocent purpose. To sustain this he testified that he did not know anything about how to make such a change in a car, and could not do it. He introduced a mechanic, and proposed to prove by him how such a change could be made. The court refused to admit the evidence. The evidence, if admitted, would have thrown no real light on the case; for, though Rush could not make this change in the car, any one could run the car after the change was made.

The trial lasted about three days. One night during the trial one of the jury took four other members of the jury and the officer out in a car, saying he wanted to see his wife. In going in this car they passed by the residence of J. C. Russell, and, as they passed in the car, they could see the premises where the offense was committed. The defendant, in his ground for a new trial, insisted that the jury thus received evidence out of court and not in his presence. The jurors were examined in court as to what they did, and their testimony does not show that the defendant was really prejudiced by this; for nothing was said about the looks of the premises or what anybody could see and all they saw was just as they were passing in the car, without any attention being directed to any part of the premises. In addition to this, the rule

is that matters of this sort must be presented to this court by a bill of exceptions. This evidence is not set out in the bill of exceptions, and, while the evidence given by the jurors in open court is set out, it is not certified by the judge, and there is no statement that this was all the evidence. Voils v. Com., 229 Ky. 305, 17 S. W. (2d) 238.

On the whole case the court concludes that there was no error to the substantial prejudice of the defendant on the trial, and that the verdict of the jury cannot be disturbed.

Judgment affirmed.