Charles RINGSTAFF, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 28, 1955.

Rehearing Denied March 25, 1955.

. Albert Karnes, Paducah, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., Roy N. Vance, Commonwealth Atty., Paducah, for appellee.

MONTGOMERY, Justice.

Charles Ringstaff, J. B. Riley, and James Stuart were indicted jointly for the offense of unlawfully, feloniously, and maliciously assaulting another with an offensive weapon or other instrument, with intent to rob. The defendants Stuart and Riley filed a motion that each be tried separately, which motion was sustained, and the Commonwealth elected to try Charles Ringstaff first. A verdict was returned fixing his punishment at twenty-one years in the penitentiary.

On this appeal, Ringstaff is urging that the court erred: (1) in giving an instruction on assault with intent to rob; (2) in not giving an assault and battery instruction; (3) in failing to give a peremptory instruction, there being no proof as to which was the aggressor; (4) in failing to instruct on self-defense; (5) in admitting incompetent evidence; (6) in not instructing the jury that if they believed the witnesses were accomplices, they would find the defendant not guilty; and (7) the instructions given were otherwise erroneous.

On January 12, 1954, at about 7:00 p. m., Charles Ringstaff, James Stuart, J. P. Riley, and John Delk met at Hattie's Tavern on North Third Street in Paducah, Kentucky, where they all drank beer for a couple of hours. Stuart had a loaded .32 revolver. During their stay there, Stuart gave Ringstaff his .32 revolver. Ringstaff then asked his companions to help him rob Meacham's Market on the outskirts of Paducah, but Stuart and Riley declined. There was no talk of robbing any other place or person. The boys then left Hattie's and went to the B & B Bar, another tavern, on South Third Street, where they stayed for twenty minutes, and Ringstaff again asked the boys to assist him in robbing Meacham's Market. They declined. While in the B & B Bar, Stuart asked Ringstaff

for his revolver. Ringstaff refused. Thereupon, the boys left the B & B Bar and walked south on Third Street to Norton Street, where they turned west on Norton and stopped at an alley halfway between Third and Fourth. While standing there, they saw Henry Powell walking south on the east side of Fourth Street. The evidence is not clear as to what conversation, if any, was then had, but they separated, Ringstaff and Delk going through the alley which led to Husbands Street, and Stuart and Riley walking west on Norton Street and turning south on Fourth Street. Mr. Powell crossed from the east side of Fourth Street to the west side of Fourth. Stuart and Riley followed him across the street, whereupon Henry Powell recrossed the street. They then proceeded south on Fourth to where Powell was intercepted by Ringstaff and Delk, who had come through the alley to Husbands Street and west on Husbands to Fourth Street. Stuart and Riley, who were fifty to seventy-five feet behind Powell, saw Powell run to the middle of the street with a drawn revolver and call for help. At the same time, Ringstaff had his revolver drawn and pointed at Powell. Stuart and Riley separated and began to run in the opposite direction. Stuart testified that he was about three blocks away when he heard a number of shots fired. Riley testified that he was about a block away when he heard shots. The police arrived shortly after the shooting and found Ringstaff unconscious in the middle of Fourth Street, three hundred feet south of the intersection of Husbands and Fourth. He had been shot by a .32 caliber revolver, once through the left thumb, once across the abdomen, once in the back between the spine and right hip, which bullet lodged under his hip bone, and once in the back on the right side, the bullet ranging forward into his chest.

Powell had been shot in the abdomen, the bullet ranging upward, and had received a cut over his left eye. After the shooting, he went to Hougland's Foundry, where he was employed as a night watchman, and told John Grief what had happened. Powell then went to the hospital where he was treated for his wounds and was sent home. While at the hospital, he gave his gun to the police. Henry Powell died shortly before the trial from a cause unrelated to the wounds received. The only testimony which we have concerning the conversation and the actual shooting is from Stuart and Riley. Ringstaff did not testify, and it does not appear why John Delk was not indicted or did not testify.

The question whether Stuart and Riley were accomplices of appellant is of prime importance. The inferences to be drawn from the evidence on this point are conflicting.

The governing principles are stated in Roberson's Criminal Law, Section 209, page 301, as follows:

"Whether a witness is an accomplice in the commission of a crime is a question of fact to be ascertained from the evidence. And where the evidence is conflicting as to whether the witness participated in the commission of the crime, or where upon the evidence, as a matter of law, the court cannot hold that the witness was an accomplice of the accused in its commission, it is a question to be determined by the jury. In such case the court should instruct the jury as to what constitutes an accomplice, and leave it for them to determine whether the witness was in fact an accomplice; and this they must ascertain mentally, 'as our method of criminal procedure submits only the general issue to the jury, and does not admit of answer by them to any intermediary questions in the record.' If the jury is of the opinion that the witness was an accomplice, it should acquit the accused, unless the corroborating evidence exists. But where the facts are not in dispute, or where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice."

These principles have been followed in Hendrickson v. Commonwealth, 235 Ky. 5, 29 S.W.2d 646; Price v. Commonwealth, 296 Ky. 144, 176 S.W.2d 271. The fact that Stuart was the owner of the pistol used by appellant or that Stuart and Riley were jointly indicted did not make either of them accomplices unless shown to be such by testimony. Anderson v. Commonwealth, 181 Ky. 310, 204 S.W. 71; Music v. Commonwealth, 186 Ky. 45, 216 S.W. 116.

The court's instruction on accomplices followed the above principles and the instructions in Stanley's Instructions, Section 946, page 1258. The question as to whether Stuart and Riley, or either of them, were accomplices, the weight to be given their testimony and the corroboration required were thereby submitted to the jury. Where the inferences on these points were in conflict, the court was correct in so doing.

The presence of the accused at the scene of the crime in a badly wounded condition, together with the variety of wounds inflicted on Powell, is considered as sufficient evidence to corroborate the testimony of Stuart and Riley if the jury believed them to be accomplices.

The appellant contends that the court erred in giving an instruction on assault with intent to rob. We see no merit in this contention because there was ample evidence that the appellant wanted to rob someone, and did attempt to do so when he intercepted and assaulted Mr. Powell.

The appellant now contends that the court erred in not giving an assault and battery instruction. The evidence indicates that the assault was made with the intent to rob Powell, so it is clear that there was no evidence whatever of any kind of an assault except one commited with the intent to rob, and the appellant was either guilty of this offense or not guilty of any. Hence, the court did not err in failing to instruct upon the question of assault without such intention, since it is not proper for the court to instruct upon

any question not supported by the evidence. Wattles v. Commonwealth, 185 Ky. 486, 215 S.W. 291; Rush v. Commonwealth, 241 Ky. 306, 43 S.W.2d 713; Tomlinson v. Commonwealth, 261 Ky. 186, 87 S.W.2d 376.

Appellant next contends that he was entitled to a peremptory instruction because there was no proof as to who was the aggressor. In viewing the evidence, we find appellant desiring to rob somebody; that he refused to return the revolver to its owner; that upon seeing Powell, he went through the alley to intercept him and had to run in order to do so; that when Powell ran to the center of the street, calling for help, the appellant followed with his revolver pointed at him; and that there was a large cut over Powell's eye which was caused by being struck by some hard object. Therefore, we see ample evidence that appellant was the aggressor.

Appellant also contends that he was entitled to a self-defense instruction. There is no merit in this contention because all the evidence points to the conclusion that he was the aggressor.

The appellant further contends that it was error to admit Stuart's and Riley's testimony that he asked their assistance in robbing Meacham's Market. It is a rule of criminal law that evidence of other crimes is not admissible; but there is an exception which is equally applicable, and that is that all evidence which is pertinent to the issue and tends to prove the crime charged against the defendant is admissible, although it may also prove, or tend to prove, the commission of other crimes by him or to establish collateral facts. In making proof against a defendant, it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial. Evidence of other crimes is competent when it tends to establish identity, or knowledge of guilt, or intent or motive for the commission of the crime under

trial, or malice, or when other offenses are so connected or interwoven with the one being tried that they cannot well be separated from it in the introduction of relevant testimony, or when the independent offense was perpetrated to conceal the crime for which the accused is on trial, or committed by novel means, or in a particular manner, or is a part of a plan or system of criminal action. Roberson's Criminal Law, Section 1794; Daniels v. Commonwealth, Ky., 269 S.W.2d 705.

Appellant claims that it was reversible error to allow John Grief to testify that Powell told him he was assaulted at the intersection of Husbands and Fourth Streets. This testimony, while not competent, was not prejudicial to the appellant because it was only cumulative.

All other grounds urged for reversal have been considered and found without merit.

Judgment affirmed.